IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| DAVID L. STULTZ, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 7:13-cv-00589 |
| | ) |
| COMMONWEALTH OF VIRGINIA | ) |
| DEPARTMENT OF MOTOR VEHICLES | ) |
| | ) |
| Defendant. | ) |

## VITA'S MEMORANDUM IN SUPPORT OF ITS
## MOTION TO VACATE ORDER TO PRESERVE EVIDENCE

The Virginia Information Technologies Agency (VITA), which is not a party to this lawsuit but which was the subject of an *ex parte* preservation order in this case, respectfully joins the Virginia Department of Motor Vehicles (DMV) in moving that the Court vacate that Order. *See* Order to Preserve Evidence, docket no. 8 (entered Feb. 13, 2014) [hereinafter "the Order"].

VITA is a third party with no direct stake in the outcome of this case. Although VITA agrees with the arguments made by DMV for vacating the Order, VITA's distinct position and interest dictates that VITA write separately to highlight issues of particular concern to VITA, each of which warrant vacating the Order.

First, the Order should be vacated because it is based upon a mistaken view of VITA's authority and the law governing records retention, of prior communications between Stultz's counsel and VITA, of the need for an order, and of what VITA can do in response to an order. Those mistaken views were created by Stultz's Motion for Order to Preserve Evidence, docket no. 5 (filed Jan. 30, 2014) [hereinafter "Stultz's Motion"], which made unsupported, erroneous, and misleading assertions regarding VITA.

1

Second, the Order should be vacated because it is overly broad, vague, and demands things of VITA that are beyond VITA's power to do. These problems are indicative of what may happen when a party seeks to circumvent the discovery process prescribed by the Rules. Vacating the Order will solve these problems and allow VITA to return to its proper role as a third party while the parties proceed with discovery in the normal manner under the Rules.

Finally, the Order should be vacated because there was no prior notice to VITA or opportunity for VITA to be heard, which is required by applicable rules and by due process. The lack of notice is incredible given that VITA has corresponded with Stultz's counsel of record over several months regarding Virginia Freedom of Information Act (VFOIA) requests apparently related to the disputes between the parties.

## I. The Order should be vacated because it was based upon unsupported, erroneous, and misleading information.

Stultz's Motion seeking the Order is less than two pages long and does not contain a single legal citation or any factual support. Stultz's Motion's unsupported assertions relating to VITA are erroneous and misleading in several material respects.

### A. Stultz's Motion misstates VITA's authority and responsibilities, generally and with respect to records preservation.

The assertion in Stultz's Motion (¶ 2) that "[VITA] is … responsible for preserving electronic communications and other electronic data from all agencies of the Commonwealth" is erroneous and misleading in two significant ways. First, VITA does not provide services to or have access to the data of "*all* agencies of the Commonwealth" (emphasis added). And second, VITA does not have centralized authority or responsibility for records retention and preservation.

#### 1. VITA's authority and role

The Virginia Information Technologies Agency (VITA) is an agency in the executive branch that has various roles with respect to information technology (IT). *See* Exhibit A

(Declaration of Eric Link) ¶¶ 2-3 [hereinafter "Link Decl."]. As explained below, Virginia law does not give VITA centralized authority or responsibility for retention and preservation of public records, whether in electronic or paper form.

VITA also provides IT services to state agencies, itself and/or through vendors. Link Decl. ¶ 4. Since VITA's inception, the General Assembly has limited VITA's provision of IT services to the executive branch. *See* 2003 Va. Acts chs. 981 & 1021, enactment clauses 4, 6, 7, and 8 ("For the purposes of this clause, 'state agency' means any administrative unit of state government in the executive branch…");[1] Va. Code § 2.2-2006 (also defining "state agency" that way). *See generally* Va. Const. art. III § 1 ("administrative agencies may be created by the General Assembly with such authority and duties as the General Assembly may prescribe").

Even within the executive branch, VITA does not administer or control all IT services and functions. It is common for agencies to manage and control agency-specific IT systems and data. Agencies also have great control over how they store agency data, including what data they choose to store centrally. And only those creator/owner agencies – the custodians – know the nature and subject matter of their data. *See* Link Decl. ¶¶ 5-7.

### 2. Records retention and VITA

The Virginia Public Records Act, Chapter 7 of Title 42.1 of the Code of Virginia, Va. Code §§ 42.1-76 through 42.1-91 (VPRA), governs the retention of public records. *See* Va. Code § 42.1-76 (expressing the General Assembly's intent "to establish a single body of law applicable to all public officers and employees on the subject of public records management and preservation"). The VPRA does not address requesting public records from state agencies, but it

---

[1] Both text and PDF versions of 2003 Va. Acts chs. 981 & 1021 are available at http://lis.virginia.gov/cgi-bin/legp604.exe?031+sum+HB1926 & http://lis.virginia.gov/cgi-bin/legp604.exe?031+sum+SB1247 , respectively.

governs whether public records continue to exist and so are available to request in the first place.

The state agency vested with centralized records management authority under the VPRA is the Library of Virginia, not VITA. *See* Va. Code § 42.1-79(A) ("The archival and records management function shall be vested in The Library of Virginia."). The VPRA's specific grants of authority are also to the Library and its Board, not to VITA.[2]

VITA does have authority to promulgate policies about how to delete electronic records securely and other such cybersecurity matters (*see* Va. Code §§ 2.2-2007(A)(6) & 2.2-2009), but VITA does not have central authority over, or responsibility for, the retention of electronic records. To the contrary, each state agency remains the custodian of the public records of that agency and is "responsible for ensuring that its public records are preserved, maintained, and accessible throughout their lifecycle." Va. Code § 42.1-85(B); *see also* Va. Code § 42.1-85(C). Each responsible agency is prohibited from disposing of its public records except in accordance with an approved records retention and disposition schedule and when there is no litigation or VFOIA request pending for those records. Va. Code § 42.1-86.1(A).[3]

Like the VPRA, VFOIA does not make VITA a central records custodian. Instead, each

---

[2] The State Library Board is empowered to "[i]ssue regulations and guidelines designed to facilitate the creation, preservation, storage, filing, reformatting, management, and destruction of public records by agencies." Va. Code § 42.1-82(A). The Library's powers include being the custodian and trustee of the Commonwealth's "archival records," *id.*; administering the Commonwealth's records management program and "establish[ing] procedures and techniques for the effective management of public records," Va. Code § 42.1-85(A); and auditing agency records management, Va. Code § 42.1-90.1.

[3] There are both general and agency-specific state records retention schedules. "General Schedules apply to the records of common functions performed by or for all localities and state agencies. Specific Schedules apply to records that are unique to an individual state agency." "Retention Schedules," Library of Virginia, *at* http://www.lva.virginia.gov/agencies/records/retention.asp (last visited Feb. 19, 2014).

4

Case 7:13-cv-00589-GEC   Document 13   Filed 02/21/14   Page 4 of 13   Pageid#: 62

agency that stores records on VITA's central IT systems remains the custodian of those records.[4]

Beyond Virginia's public records laws, VITA has not been given central authority over government records. And it is VITA's policy and practice not to access, search, or otherwise involve itself in the data of other agencies, other than what is necessary and proper in the provision of IT services to those agencies. This is due both to respect for the authority of other agencies over their own records and to a panoply of legal restrictions on various agency data.[5] *See* Link Decl. ¶ 7.

In short, contrary to what Stultz's Motion represented, VITA is not a central records custodian, and VITA does not have a central records management or preservation authority or mandate. Stultz's counsel knew these things before filing the Motion, in part because VITA addressed the VPRA in response to questions from Stultz's counsel (*see* Link Decl. ¶ 19 & Exs. 11-12) and in part because Stultz's counsel, like anyone else, is charged with knowledge of the law. *E.g.*, *Othi v. Holder*, 734 F.3d 259, 270 (4th Cir. 2013) (quoting *Atkins v. Parker*, 472 U.S. 115, 130 (1985)); *King v. Empire Collieries Co.*, 148 Va. 585, 590, 139 S.E. 478, 479 (1927).

### B. Stultz's Motion provides an inaccurate and misleading account of prior communications between Stultz's counsel and VITA.

The assertion in Stultz's Motion (¶ 4) that, during prior proceedings, Stultz "notified

---

[4] *See* Va. Code § 2.2-3704(J) (providing that where a public body transfers records "to any entity, including but not limited to any other public body, for storage, maintenance, or archiving, the public body initiating the transfer of such records shall remain the custodian of such records for purposes of responding to requests for public records made pursuant to this chapter and shall be responsible for retrieving and supplying such public records to the requester.").

[5] Examples of restrictions on agency data include the following: Va. Code § 46.2-208, which makes DMV records that contain certain types of information privileged; Virginia's Government Data Collection and Dissemination Practices Act (Chapter 38 of Title 2.2 of the Code of Virginia), Va. Code §§ 2.2-3800 through 2.2-3809, which establishes generally applicable limits on state and local government's collection and use of personal information; and the many federal privacy and information security statutes and regulations, whose restrictions often apply to state government entities.

5

VITA of the need to preserve all information that may be relevant to the circumstances that give rise to this suit" is misleading. To the contrary, on January 30, 2014, Stultz significantly expanded (and clarified) his claims about what data may be relevant and should be preserved.

On January 30, Stultz's counsel expanded the number of people whose data is claimed to be relevant to 22, adding 17 names not previously identified by Stultz's counsel to VITA. Stultz's Motion (¶ 7) asks for an order for "all emails, data (including metadata), documents or other information originating from or sent to or between" those 22 persons "from July 1, 2011 to the present and continuing." The Order adopts that form. Stultz's counsel's letter to VITA of January 30, 2014, contains the same 22 names. Prior to January 30, 2014, Stultz's counsel had identified only five names to VITA.[6]

The assertion in Stultz's Motion (¶ 5) that "VITA has claimed that information relevant to the circumstances that give rise to this suit was not preserved" is false. VITA has not claimed, to Stultz's counsel or anyone else, that relevant information has not been preserved. Indeed, VITA has no way of assessing what information may be relevant to this suit, either before the Order or after.

Stultz's counsel corresponded with VITA from August 20, 2013 to late December 2013, making and following up on five VFOIA requests that are apparently related in some way to this case. VITA timely responded to each request, providing some records at no charge and identifying the substantial costs that would be involved in restoring data from backups. (Stultz's

---

[6] Stultz's counsel sent DMV and VITA a preservation letter on September 5, 2013. Link Decl. ¶ 21. That September 5 letter included only three names (Stultz himself and two others) and did not identify *any* data custodians – instead "requesting that all e-mails … pertaining to the grievances/suspensions/terminations of David Stultz, Robbie Supinger, and Ana Wootten, and all involved parties and employees be preserved." *See* Link Decl. Ex. 17. Then, in November, Stultz's counsel sent VITA two VFOIA requests seeking e-mails of two other persons. *See* Link Decl. Exs. 5 & 9. The Motion does not explain how 17 other people became relevant in the last few months.

6

counsel never actually chose to have backup data restored.)  The requests and responses are included with the declaration attached to this brief.  *See* Link Decl. ¶¶ 18-19 & Exs. 1-16.

Nowhere in its responses did VITA make any claims about relevant information not being preserved.  Nor would VITA, as a third-party with no interest in this case prior to the Order, have any way of assessing what information is "relevant to the circumstances that give rise to this suit."  VITA does not know what data DMV chooses to store with VITA, the various claims and subject matters disputed between Stultz and DMV, or the subject matters addressed in DMV's data.  *See* Link Decl. ¶¶ 6-7.

### C. The Motion makes inaccurate and misleading assertions about the need for an Order and about what VITA can do in response to an Order.

Stultz's Motion's statement of the need for the Order – that "Absent an order from this Court VITA may permit other information relevant to the circumstances that give rise to this suit to be destroyed" (¶ 5) – is erroneous and misleading.  DMV controls and is responsible for preservation of its records, not VITA.  VITA's permission is not necessary or usual in regard to retention of DMV records, and VITA lacks the ability to determine what DMV records may be relevant.

Finally, the assertion in Stultz's Motion (¶ 8) that VITA has unique powers to prevent user deletions of data or to restore such data expresses an erroneous and misleading view of VITA's involvement with agency data and of VITA's backup systems and processes.

Among the services that VITA and its vendors provide to executive branch agencies are e-mail systems, electronic storage for whatever data agencies choose to store centrally, and disaster recovery services.  For administrative and technical reasons, including to facilitate disaster recovery services, VITA's infrastructure services vendor makes and manages backup copies of the e-mails and other data that agencies choose to store centrally.  *See* Link Decl. ¶¶ 4,

7

6, 10. These "central backups" occur nightly and involve a tremendous amount of data. As data gets older, fewer backup copies of it exist. The entire backup schedule extends approximately 12 months. *See id.* ¶¶ 11-14.

All of the central backups are snapshots in time of the contents of a particular mailbox or server. Accordingly, it is possible for a record never to appear in a backup – for example, if a user receives/creates an e-mail record and then deletes that e-mail record in the same day, before any nightly backup of that e-mail record exists. Link Decl. ¶ 15.

Agencies may and do sometimes request that data be preserved or restored from the central backups, but doing so may involve considerable work and cost, and the central backups are not intended to be a means of compliance with the VPRA and other public records laws.[7] Nor would the central backups be sufficient for compliance with such laws. *See* Link Decl. ¶¶ 10 & 16. With respect to VITA's central backups (which may contain extra copies of *potentially* relevant data), VITA is working with its vendor to ensure compliance with the Order insofar as it is possible for VITA to comply, but Stultz's Motion is mistaken to the extent that it looks to the central backups' extra copies as a primary source of discoverable information.

**II.     The Order should be vacated because it is overly broad and vague and demands things that VITA cannot do, and because vacating the Order is needed to the parties to proceed with discovery in the manner prescribed under the Rules.**

The Order contains a number of problems of significant concern to VITA:

- Many of VITA's obligations under the Order are in regard to "information that may be relevant to this suit." (Order at 1.) VITA has no way to judge what

---

[7] VITA's backups themselves are not "public records" within the meaning of the VPRA because they are "nonrecord materials," specifically "extra copies" of public records made only for administrative and technical convenience and reference and preserved only for the limited period that such extra copies are needed. *See* Va. Code § 42.1-77 ("For purposes of this chapter, 'public record' shall not include nonrecord materials, meaning materials made or acquired and preserved solely for reference use or exhibition purposes, extra copies of documents preserved only for convenience or reference, and stocks of publications.").

information may be relevant to the present suit. Nor can VITA identify what information "may reasonably relate to the matters alleged in this suit." (Order at 2.) Indeed, the Order seems to extend well beyond the matters alleged in this suit, in that only 2 of the 22 individuals named in the Order (Stultz himself and Supinger) are mentioned in the Complaint.

- VITA is ordered to preserve e-mail and other data of a current member of the Virginia Senate, "Steve Newman" (*see* Profile of Senator Stephen D. Newman, *at* http://apps.lis.virginia.gov/sfb1/Senate/senatorwebprofile.aspx?id=371, last visited Feb. 20, 2014), but VITA does not provide e-mail or other IT services to the legislative branch and so cannot comply.[8]

- VITA "is specifically ORDERED to preserve records which users delete and can only be recovered by VITA." As explained above, however, VITA's backups are nightly snapshots that may not capture all user-deleted data. Other than by barring all user deletions of data – which is not possible with the technology presently implemented across all IT services, which VITA has no statutory authority to do, and which likely would result in violations of law[9] – VITA cannot prevent user deletions of data. Only the agency responsible for preserving the records in question and with direct authority over data custodians can achieve such preservation.

- Similarly, VITA "is specifically ORDERED to preserve … shared folders on the IT infrastructure concerning Mr. Stultz and the above involved parties," but only the custodians of those records are in a position to determine what shared folders may concern Mr. Stultz or other relevant persons. Unlike e-mail mailboxes, which are generally associated with particular persons' e-mail accounts, shared folders may not be associated with, or easily identifiable as related to, any particular person.

- The individuals listed in the Order include Martin Kent, the Chief of Staff to former Governor Robert McDonnell, and Sean Connaughton, the former Secretary of Transportation in the McDonnell administration. Virginia law requires the Governor's Office to deliver "all correspondence and other records" to the Library of Virginia for archiving by the end of a governor's term. Va. Code § 2.2-126. The Library has authority to, and does, operate its own IT systems and storage for archival records. *See* Va. Code § 42.1-79(A); Link Decl. ¶ 8. Although VITA may still have copies of some records, Governor's Office records from the McDonnell administration now generally fall under the custody and control of the Library, so VITA's involvement and compliance ability with respect to the former governor's cabinet and staff is limited.

---

[8] Strangely, Sen. Newman is not the state Senator mentioned by name in the Complaint. *See* Compl. ¶¶ 39 & 40 (discussing Senator Creigh Deeds).

[9] *See, e.g.*, Va. Code § 42.1-86.1(C) (requiring deletion of public records "in a timely manner in accordance with the provisions of this chapter"). *See also* Link Decl. ¶¶ 6-7.

9

- The individuals listed in the Order include "Geogia Esposition," who does not appear to exist. Counsel guesses that the Order was intended to refer to Georgia Esposito, but VITA and its counsel should not be forced to guess at the intended scope of a preservation order.

- Last but not least, the Order "is a continuing Order" that will, if not vacated, be in effect for months. Preserving backups longer than VITA's routine operations dictate is possible but certainly not cost-free – manual preservation consumes tapes, storage space, and staff resources, and it interferes (at least to a degree) with the operation of a largely automated, complex, and sizable backup system. *See* Link Decl. ¶¶ 14, 16.

This is VITA's first opportunity to object to the Order, including the above overbreadth, vagueness, and other problems. "A preservation order entered over objections should be narrowly tailored" (Notes of Advisory Committee on 2006 amendments to Fed. R. Civ. P. 26, Note to subdivision(f)), and the Order in this case is not narrowly tailored. The Order should be vacated, thereby remedying these problems.

Vacating the Order will also allow VITA to return to its proper role as a third party, while the parties, Stultz and DMV, proceed with discovery in the manner prescribed by the Rules. The Rules contemplate and require that parties confer and attempt to agree regarding the conduct of discovery, especially of electronically stored information. *See* Fed. R. Civ. P. 26(f). As the Advisory Committee's Notes explain, such cooperation is important to control the conduct of discovery and to avoid the burdens and interference that can otherwise result. Preservation is specifically identified as part of that process and discussed at length:

> Rule 26(f) is also amended to direct the parties to discuss any issues regarding preservation of discoverable information during their conference as they develop a discovery plan. This provision applies to all sorts of discoverable information, but can be particularly important with regard to electronically stored information. The volume and dynamic nature of electronically stored information may complicate preservation obligations. The ordinary operation of computers involves both the automatic creation and the automatic deletion or overwriting of certain information. Failure to address preservation issues early in the litigation increases uncertainty and raises a risk of disputes.
>
> The parties' discussion should pay particular attention to the balance between the

10

> competing needs to preserve relevant evidence and to continue routine operations critical to ongoing activities. Complete or broad cessation of a party's routine computer operations could paralyze the party's activities. *Cf. Manual for Complex Litigation* (4th) § 11.422 ("A blanket preservation order may be prohibitively expensive and unduly burdensome for parties dependent on computer systems for their day-to-day operations.") The parties should take account of these considerations in their discussions, with the goal of agreeing on reasonable preservation steps. [Notes of Advisory Committee on 2006 amendments to Fed. R. Civ. P. 26, Note to subdivision(f).]

The Rules are not intended to result in the routine entry of preservation orders, and "Ex parte preservation orders should issue only in exceptional circumstances." *Id.* There are no such exceptional circumstances in this case. Vacating the Order will allow the parties to proceed with discovery in the normal, coordinated manner prescribed by the Rules.

### III. The Order should be vacated because VITA had no notice or opportunity to be heard on the subjects of Stultz's Motion and the Order.

Both the Federal Rules of Civil Procedure and this Court's local rules require service of filings. *See* Fed. R. Civ. P. 5(a); W.D. Va. Gen R. 7(g)(2). Yet Stultz's Motion had no certificate of service. In fact, Stultz's counsel never served the Motion upon VITA, the entity that was the subject of Stultz's Motion (and the Order). Link Decl. ¶ 23. VITA's first notice of Stultz's Motion and the Order came via counsel on February 14, 2014, after the matter had been decided through entry of the Order. *See* Link Decl. ¶ 24.

The lack of notice to VITA is all the more remarkable given that Stultz's counsel has been corresponding with VITA for months. *See* Link Decl. ¶ 19 & Exs. 1-16. Stultz's counsel even sent a preservation letter to VITA on January 30, 2014, <u>the same day</u> Stultz's Motion was filed and two weeks before the Order was entered, but that letter provided no notice of Stultz's Motion. *See* Link Decl. ¶ 22 & Ex. 18. It is difficult to conclude anything but that Stultz's counsel sought to avoid disclosing Stultz's Motion and to prevent VITA from being heard until after it was too late.

The failure to serve VITA with a copy of the Motion violated governing Rules. Seeking

11

an *ex parte* preservation order in this case further violated the Rules.  And the lack of notice and an opportunity for VITA to be heard before becoming subject to a preservation order violated the basic protections guaranteed by due process.  *See, e.g.*, *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014) ("At bottom, procedural due process requires fair notice … and an opportunity to be heard.").

The Court should vacate the Order , and award any other relief that may be proper, to remedy these violations.

## CONCLUSION

VITA respectfully requests that the Court vacate its Order to Preserve Evidence, docket no. 8 (entered Feb. 13, 2014), and award VITA such other relief as may be proper.

Respectfully submitted,

VIRGINIA INFORMATION TECHNOLOGIES
AGENCY

By:       /s/ - Joshua D. Heslinga
                 Counsel

Mark Herring
Attorney General of Virginia

Cynthia E. Hudson
Chief Deputy Attorney General

John W. Daniel II
Deputy Attorney General, Commerce, Environment and Technology Division

John Westrick
Senior Assistant Attorney General, Chief, Technology and Procurement Section

Joshua D. Heslinga (VSB # 73036)
Assistant Attorney General
*Attorney for the Virginia Information Technologies Agency*
Office of the Attorney General
900 E. Main Street

12

Case 7:13-cv-00589-GEC   Document 13   Filed 02/21/14   Page 12 of 13   Pageid#: 70

Richmond, Virginia 23219
(804) 786-3847
jheslinga@oag.state.va.us

# CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on February, 21, 2014, I am electronically filing the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF filing users:

| | |
|---|---|
| Melvin E. Williams<br>1320 Third Street, SW<br>Roanoke, Virginia 24016<br>540-266-7800<br>540-206-3857 (fax)<br>Mel@melwilliamslaw.com<br><br>Dale W. Webb<br>1171 Grandin Road<br>P. O. Box 4126<br>Roanoke, Virginia 24015<br>540-527-3500<br>540-527-3520 (fax)<br>dwebb@franklmillerwebb.com<br><br>*Counsel for Plaintiff David R. Stultz* | Sydney E. Rab<br>srab@oag.state.va.us<br>(804) 786-1109<br><br>Farnaz Thompson<br>Fthompson@oag.state.va.us<br>(804) 225-4778<br><br>Office of the Attorney General<br>900 E. Main Street<br>Richmond, Virginia 23219<br>Fax: (804) 371-2087<br><br>*Counsel for Defendant Virginia Department of Motor Vehicles* |

       _____/s/_____
       Joshua D. Heslinga (VSB # 73036)
       *Attorney for the Virginia Information Technologies Agency*
       Office of the Attorney General
       900 E. Main Street
       Richmond, Virginia 23219
       (804) 786-3847
       fax: (804) 692-1647
       jheslinga@oag.state.va.us