CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 05 2015

JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID LEE STULTZ, | ) |
| Plaintiff, | ) Civil Action No. 7:13CV00589 |
| v. | ) **MEMORANDUM OPINION** |
| COMMONWEALTH OF VIRGINIA DEPARTMENT OF MOTOR VEHICLES, et al., | ) By: Hon. Glen E. Conrad<br>) Chief United States District Judge |
| Defendants. | ) |

This case is presently before the court on the defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated in open court on July 2, 2015, and for those set forth below, the motion will be granted in part and denied in part.

### Background

The following facts, taken from the plaintiff's amended complaint, are accepted as true for purposes of the defendants' motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Plaintiff David Lee Stultz was employed by the Virginia Department of Motor Vehicles (DMV) from 2005 until he was terminated on April 16, 2013. For approximately two and a half years prior to his termination, Stultz served as the Special Agent in Charge (SAC) of the Law Enforcement Services Section of the Appomattox Division of the DMV, which was headquartered at the DMV's Customer Service Center in Lynchburg, Virginia.

Upon being appointed to the SAC position, Stultz began to receive complaints regarding Jennifer Dawson, a Program Support Technician who performed clerical functions for the Law Enforcement Services Section. The complaints increased after Stultz began working full-time at

the Lynchburg office, and Stultz, himself, witnessed actions taken by Dawson that raised safety concerns. For instance, Dawson possessed a weapon on DMV property, hid under her desk in the dark, claimed that her stepson was going to murder her, and indicated that she was contemplating suicide.

Stultz relayed his concerns regarding Dawson's behavior to a number of DMV officials, including Richard D. Holcomb, Commissioner of the DMV; Joseph Hill, Assistant Commissioner; Jeannie Thorpe, Human Resources Director; Donald Boswell, Director of Law Enforcement Services; and Thomas Penny, Director of Field Operations. Unbeknownst to Stultz, Dawson had a "personal connection" to Virginia State Senator Steve Newman, who agreed to reach out to Holcomb to help Dawson keep her job. Am. Compl. ¶ 43. As a result of Senator Newman's involvement, the DMV officials declined to take any actions against Dawson. Instead, Boswell directed Stultz to implement a policy prohibiting DMV law enforcement officers from working alone with Dawson in the Lynchburg office. This policy resulted in the need for an extra officer to remain in the building with Dawson at all times, "thereby diverting and wasting limited public resources." Id. at ¶ 47.

On October 17, 2011, following continued problems with Dawson, Stultz utilized the State Employee Fraud, Waste, and Abuse Hotline to lodge a complaint regarding Dawson's behavior and the DMV's inadequate response to the concerns raised by Stultz and other DMV employees. The complaint was disclosed to a number of DMV officials, including Holcomb, Hill, Thorpe, and Boswell. Stultz alleges that Hill interfered with the investigation of the complaint, and that he and other DMV officials conspired to retaliate against him for pursuing it. Ultimately, "no action was taken by the Fraud, Waste, and Abuse auditor to address the complaint[], and the safety, waste, and abuse [concerns] created by . . . Dawson in the Lynchburg office continued unabated." Id. at ¶ 62.

2

On March 15, 2012, Stultz and Assistant Special Agent in Charge (ASAC) Robert Supinger met with Holcomb to discuss the ongoing issues involving Dawson. On the following day, the DMV announced that it was transferring Supinger from Lynchburg to Waynesboro. Although Supinger, who is Caucasian, and his wife, who is Asian, had worked for the DMV on different floors of the same building for over twelve years, Supinger was advised that the transfer was necessary to comply with the DMV's nepotism policy.

Supinger filed a grievance challenging the transfer. Stultz, as Supinger's immediate supervisor, was the first level respondent to the grievance. Stultz advised his superiors, including Boswell, Hill, and Thorpe, that he could find no violation of the nepotism policy, and that it appeared that Supinger and his wife were the only mixed-race or mixed-nationality couple against whom the policy was being enforced. Boswell and Thorpe pressured Stultz to attempt to convince Supinger to withdraw the grievance, and warned Stultz "not to get in the middle of it" because Holcomb would "destroy" him. Id. at ¶¶ 93-94. Ultimately, the DMV failed to resolve the grievance.

In June of 2012, Stultz "reported the unlawful, unsafe, wasteful, and retaliatory actions" taken by DMV officials to Sean Connaughton, the Secretary of Transportation for the Commonwealth of Virginia, and to Georgia Esposito, the Executive Assistant to the Secretary. Id. at ¶¶ 72 and 96. Rather than conducting an independent investigation, Connaughton and Esposito relayed Stultz's concerns to Holcomb, which resulted in Stultz being identified as a "whistleblower." Id. at ¶ 73. A few weeks later, Holcomb and Hill announced that the DMV was reorganizing, effective October 1, 2012. The reorganization would result in the elimination of the Appomattox Division and the creation of a larger Roanoke District.

3

When the reorganization plan was originally disseminated, the plan called for Supinger and a female ASAC to work in the new Roanoke District. However, in August of 2012, Stultz and Supinger learned that Supinger would be transferred out of Law Enforcement Services to a different work unit, and that the female ASAC, who had less seniority, would remain in the Roanoke District.

Supinger also filed a grievance regarding this transfer decision. When Stultz investigated the grievance, he was told that the reason Supinger was chosen for the transfer was the fact that the other ASAC was "a female with young children." Id. at ¶ 106. Although Stultz expressed the opinion that the proposed transfer "constituted gender discrimination in violation of law," Hill, Boswell, and Thorpe refused to permit Stultz to resolve Supinger's grievance appropriately. Id. at ¶ 109. They insisted that the transfer was "what the Commissioner wanted," and discouraged Stultz from opposing it. Id. at ¶ 113.

Stultz continued to believe that the DMV's decisions to transfer Supinger, first to another division and then to another unit, were unlawful. Stultz shared his opinions with his superiors, including Hill, Boswell, and Penny, and advised them that he opposed the unlawful employment practices that were being perpetrating against Supinger. In response, the DMV officials advised Stultz that his efforts to assist Supinger in contesting the transfers could negatively affect Stultz's own employment with the DMV.

After the DMV elected not to overturn its transfer decisions, Supinger filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC). DMV officials later learned that Stultz was a participant in Supinger's EEOC proceedings arising from the charges.

4

Stultz and other employees met with Senator Steve Newman and advised him of their ongoing concerns regarding Dawson's workplace behavior, and the effects that her behavior could have on the safety of employees and the public. During the meeting, Stultz also expressed his opinion that Supinger was being unfairly treated and unlawfully discriminated against by the DMV. Senator Newman shared the contents of the discussion and the identities of the participants with Holcomb. Stultz was later advised by Boswell and Penny that he should not have met with Senator Newman.

On September 13, 2012, Dawson assaulted another female DMV employee, Senior Special Agent Anastasia Wootten, in the ladies' restroom at the Lynchburg DMV building. After conferring with the Commonwealth's Attorney's Office for the City of Lynchburg, Wootten obtained a warrant charging Dawson with assault and battery.

The DMV proceeded to investigate the restroom incident. On September 16, 2012, Stultz was ordered to report to Richmond the following day to be interviewed by Penny. On September 17, 2012, and again on October 11, 2012, Penny "interrogated" Stultz regarding his involvement in Wootten's efforts to obtain a warrant against Dawson. Id. at ¶ 175.

On October 12, 2012, Stultz and other DMV employees, as "off-duty, private citizens," met with Virginia State Senator Creigh Deeds. Id. at ¶ 132. In response to the concerns raised during the meeting, Senator Deeds proposed that he submit a bill that would reassign state agency law enforcement personnel to the Superintendent of the Virginia State Police. The DMV employees in attendance, including Stultz, supported this proposal.

Holcomb, Connaughton, Esposito, Hill, Thorpe, Boswell, Penny, and DMV Legal Analyst Ronna Howard subsequently learned of the meeting with Senator Deeds. Boswell advised Stultz that he had embarrassed Holcomb by speaking with Senator Deeds, and that

5

Holcomb, Thorpe, and Hill wanted Stultz to be terminated for "speaking to public officials outside of DMV." Id. at ¶¶ 136, 141. Penny also accused Stultz of embarrassing Holcomb and the DMV "by talking about problems within DMV to every official up and down the I-81 corridor." Id. at ¶ 142.

On February 7, 2013, Stultz was "interrogated" again for several hours at the DMV's headquarters in Richmond. Id. at ¶ 176. Although Stultz was told that he would be questioned about the incident involving Dawson and Wootten, the interrogation instead focused on his off-duty communications with elected officials, his involvement in Supinger's EEOC proceedings, and his role in promoting Senator Deed's proposed legislation. Id. at ¶ 178.

On February 8, 2013, Holcomb and Hill used a computer to access Stultz's personal information maintained by the Commonwealth. That same day, Hill, at the direction of Holcomb, secured and sent Stultz's driver's license, photograph, and other personal information to the Office of the Secretary of Transportation and to the Division of Capitol Police, and instructed those entities to be on the lookout for Stultz.

On March 5, 2013, Hill and Penny suspended Stultz. Stultz alleges that Penny told him, in the presence of Hill, that the reason for the suspension was the fact that Stultz had "complain[ed] about matters of concern to persons outside of DMV." Id. at ¶ 206. Penny also indicated that Stultz "should not have opposed unlawful employment practices." Id. at ¶ 207.

On April 2, 2013, Stultz provided a written statement to the EEOC regarding Supinger's charges of discrimination. Two weeks later, on April 16, 2013, the DMV terminated Stultz's employment.

Stultz claims that he was denied a grievance hearing following his termination, and that false and defamatory statements were subsequently disseminated to prospective employers, which

caused the prospective employers to rescind conditional offers of employment. Stultz also claims that certain defendants tampered with prospective witnesses and withheld evidence that would have enabled him to obtain unemployment benefits from the Virginia Employment Commission.

## Procedural History

Stultz filed the instant action on December 10, 2013. In his original complaint, Stultz alleged that he was terminated by the DMV in retaliation for opposing acts of gender, race, and national origin discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

On December 12, 2014, Stultz filed an 80-page amended complaint, which added the Commonwealth of Virginia and ten individuals as defendants, and asserted additional claims under federal and state law. The new individual defendants named in the amended complaint are as follows: Richard D. Holcomb, individually and in his official capacity as Commissioner of the DMV; Sean Connaughton, individually and in his official capacity as the former Secretary of Transportation for the Commonwealth of Virginia; Georgia Esposito, individually and in her official capacity as Executive Assistant to the Secretary of Transportation; Joseph Hill, individually and in his official capacity as Assistant Commissioner of the DMV; Jeannie Tharpe, individually and in her official capacity as Human Resources Director for the DMV; William Anderson, individually and in his official capacity as Employee Relations Manager for the DMV; Thomas Penny, individually and in his official capacity as Director of Field Operations for the DMV; Ronna Howard, individually and in her official capacity as Legal Analyst for the DMV; Donald Boswell, individually and in his official capacity as the former Director of Law Enforcement Services for the DMV; and Aubrey Layne, in his official capacity as the current Secretary of Transportation.

The amended complaint includes the following claims: denial of due process in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 (Count I); retaliation in violation of Title VII (Count II); retaliation in violation of the First Amendment and 42 U.S.C. § 1983 (Count III); supervisory liability (Count IV); violation of the Driver's Privacy Protection Act (Count V); tortious interference with contract expectancy (Count VI); and computer invasion of privacy (Count VII).

The defendants have moved to dismiss the amended complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the motion on July 2, 2015. The motion has been fully briefed and is ripe for review.

## Standard of Review

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In reviewing a Rule 12(b)(6) motion, the court may consider the complaint, its attachments, and documents attached to a motion to dismiss, as long as they are "integral to and explicitly relied on in the complaint" and

8

the plaintiff does not challenge their authenticity. CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009) (internal citation and quotation marks omitted).

## Discussion

### I. Claims under § 1983

Stultz asserts a number of claims under 42 U.S.C. § 1983, which imposes civil liability on any person acting under color of state law to deprive another person of rights and privileges secured by the Constitution and laws of the United States. Specifically, Stultz claims that certain defendants violated his Fourteenth Amendment right to due process and his First Amendment right to free speech.

#### A. Due process violations

The due process clause of the Fourteenth Amendment provides that "no state shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. "[I]n order to claim entitlement to the protections of the due process clause – either substantive or procedural – a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been 'deprived' of that protected interest by some form of 'state action.'" Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988) (internal citations omitted). If the plaintiff makes such showing, the court considers what process was required and whether any provided was adequate in the particular factual context. Id.

Stultz's due process claims are set forth in Count I of the amended complaint. Specifically, Stultz alleges: (1) that Holcomb, Hill, Connaughton, Esposito, Thorpe, and Penny denied him due process by refusing to afford him any post-termination administrative procedures to grieve his termination; (2) that Holcomb, Hill, Connaughton, Esposito, Thorpe, Penny, and Howard denied him due process by disseminating false and defamatory statements regarding his

9

termination that caused prospective employers to withdraw conditional offers of employment; (3) that Holcomb, Hill, Connaughton, Esposito, Thorpe, Penny, and Howard denied him due process by subjecting him to interrogations; (4) that Holcomb, Hill, Connaughton, Esposito, Thorpe, Penny, and Howard denied him due process by destroying or withholding evidence that would have enabled Stultz to obtain unemployment compensation benefits; and (5) that Holcomb, Hill, Thorpe, Penny, and Howard denied him due process by intimidating prospective witnesses. The court will address each claim in turn.

### 1. Denial of post-termination grievance hearing

Stultz first alleges that he had a constitutionally protected property interest in his continued employment with the Commonwealth and the DMV, and that Holcomb, Hill, Connaughton, Esposito, Thorpe, and Penny denied him due process by refusing to afford him any post-termination administrative procedures to grieve his termination. In response to this particular due process claim, which is also the subject of cross-motions for summary judgment, the defendants acknowledge that Stultz had a protected property interest in his continued employment. However, the defendants dispute Stultz's assertion that they refused to afford him the opportunity to pursue any post-termination grievance procedures. For the reasons stated during the hearing on the pending motion to dismiss, the court is of the opinion that the defendants' arguments with respect to this claim are more appropriately addressed on summary judgment, since they require the court to consider evidence outside the pleadings. To the extent the defendants seek dismissal of the claim under Rule 12(b)(6), the motion will be denied.

### 2. Publication of false and defamatory statements

Stultz next alleges that Holcomb, Hill, Connaughton, Esposito, Thorpe, Penny, and Howard deprived him of protected liberty interests in his reputation and his ability to obtain future

10

employment by publishing false and defamatory statements regarding his termination. "To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2007). If the plaintiff can establish a protected liberty interest under this framework, the plaintiff "is entitled to due process, which in this context involves a 'name-clearing hearing.'" Harrell v. City of Gastonia, 392 F. App'x 197, 203 (4th Cir. 2010). Ultimately, "the constitutional harm is not the defamation itself; rather it is the denial of a hearing at which the dismissed employee has an opportunity to refute the public charge." Sciolino, 480 F.3d at 649 (internal citation and quotation marks omitted).

During the hearing on the defendants' motion to dismiss, both sides agreed that if Stultz is able to establish the existence of a protected liberty interest under the framework set forth in Sciolino, his claim that he was denied the opportunity to clear his name will rise or fall with his claim that defendants refused to afford him a post-termination grievance hearing. Accordingly, the court advised the parties that it would take the liberty interest claim under advisement pending a ruling on the cross-motions for summary judgment on the property interest claim. To the extent the defendants seek dismissal of the liberty interest claim under Rule 12(b)(6), the motion will be denied.

### 3. Interrogations

Stultz also claims that Holcomb, Connaughton, Esposito, Thorpe, Hill, Penny, and Howard denied him due process by interrogating him on three separate occasions without advising him that he was under investigation or being considered for disciplinary action. Upon review of the amended complaint, the court concludes that Stultz has not sufficiently alleged that the

11

interrogations deprived him of a constitutionally protected liberty or property interest. See Wootten v. Commonwealth, No. 6:14-CV-00013, 2015 U.S. Dist. LEXIS 35949, at *43 n.8 (W.D. Va. Mar. 23, 2015) (Moon, J.) (holding that similar allegations were insufficient to state a due process claim). Accordingly, the court will dismiss this portion of Count I.

### 4. Destruction of evidence

Stultz next alleges that Holcomb, Connaughton, Esposito, Thorpe, Hill, Penny, and Howard violated his right to due process by destroying or withholding evidence that would have exonerated Stultz and enabled him to obtain unemployment benefits. In moving to dismiss this portion of Count I, the defendants acknowledge that unemployment benefit claimants have a property interest that implicates due process guarantees. See Defs.' Br. in Supp. of Mot. to Dismiss 11 (citing Wilkinson v. Abrams, 627 F.2d 650 (3d Cir. 1980)); see also Cuellar v. Texas Emp't Comm'n, 825 F.2d 930, 935 (5th Cir. 1987) (emphasizing that "[t]here can be no doubt that unemployment benefits are a species of property protected by the fifth and fourteenth amendment due process clauses"); Klimco v. Virginia Emp't Comm'n, 222 S.E.2d 559, 565 (Va. 1976) (assuming, without deciding, that the expectation of continued unemployment compensation benefits is a protected property interest). Rather than challenging whether this particular due process claim was adequately pled, the defendants argue that the court should abstain from addressing the claim, pursuant to Railroad Commission of Texas v. Pullman Company, 312 U.S. 496 (1941). For the following reasons, however, the court finds the defendants' abstention argument unpersuasive.

The Supreme Court of the United States has made clear that federal courts have "a virtually unflagging obligation to exercise their jurisdiction . . . ." Deakins v. Monaghan, 484 U.S. 193, 203 (1988). Consequently, "[a]bstention from the exercise of federal jurisdiction is the

12

exception, not the rule." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). The Pullman abstention doctrine, on which the defendants rely, "requires federal courts to abstain from deciding an unclear area of state law that raises constitutional issues because state court clarification might serve to avoid a federal constitutional ruling." Nivens v. Gilchrist, 444 F.3d 237, 245 (4th Cir. 2006). "To apply the Pullman doctrine, at a minimum it must appear that there is (1) an unclear issue of state law presented for decision (2) the resolution of which may moot or present in a different posture the federal constitutional issue such that the state law issue is potentially dispositive." Educational Servs., Inc. v. Maryland State Bd. for Higher Educ., 710 F.2d 170, 174 (4th Cir. 1983); see also Nivens, 444 F.3d at 245 ("Pullman abstention is appropriate when a plaintiff brings a federal case that requires the federal court to interpret an unclear state law.").

Based on the circumstances and arguments presented, the court is unable to conclude that the Pullman doctrine provides an appropriate basis to abstain from considering the due process claim arising Stultz's efforts to obtain unemployment compensation benefits. The defendants do not identify any unclear or complex issue of state law that must be decided before Stultz's federal constitutional claim can be resolved. Nor does the amended complaint present any challenges to the state laws governing proceedings before the Virginia Employment Commission, or the Commission's decision to deny Stultz's application for unemployment compensation benefits. Instead, Stultz claims that certain defendants violated his right to due process by intentionally withholding and destroying favorable evidence. In the absence of any indication that this particular claim presents an unclear issue of state law, the court declines to abstain under Pullman. Accordingly, the motion to dismiss will be denied with respect to this claim.

13

### 5. Witness intimidation

In the final component of his due process claim, Stultz asserts that Holcomb, Hill, Thorpe, Penny, and Howard denied him due process by intimidating prospective witnesses. Specifically, Stultz alleges that Hill, Penny, and Howard advised Special Agent David Hicks that he would be terminated if he did not provide information helpful to the DMV, and that they forced Hicks to change, alter, and contradict prior statements that were favorable to Stultz. Stultz further alleges that Holcomb, Hill, and Thorpe "threatened, pressured, coerced, and misused public funds to intimidate and/or force . . . Boswell to alter and change his testimony and support . . . Stultz's termination." Am. Compl. ¶ 285.

Assuming the truth of Stultz's allegations of witness intimidation, the court concludes that the amended complaint states a plausible due process claim. See Detweiler v. Commonwealth, 705 F.2d 557, 561-62 (4th Cir. 1983) ("The fundamental requisite of due process of law is the opportunity to be heard . . . . A state official's intimidation of a prospective witness infringes the right to a hearing.") (internal citation and quotation marks omitted). Accordingly, the motion to dismiss will be denied with respect to this component of Count I.

### B. First Amendment retaliation

In Count III of the amended complaint, Stultz claims that Holcomb, Hill, Connaughton, Esposito, Thorpe, Penny, Howard, Boswell, and Anderson violated his rights under the First Amendment by retaliating against him for speaking out on matters of public concern. For the reasons stated during the hearing on the pending motion, and given the recent decision by the United States Court of Appeals for the Fourth Circuit in Hunter v. Town of Mocksville, ___ F.3d ___, 2015 U.S. App. LEXIS 10033 (4th Cir. June 15, 2015), the court is of the opinion that Stultz's allegations of retaliation in violation of the First Amendment are sufficient to withstand review

under Rule 12(b)(6). The defendants' motion will be denied with respect to this claim, and they will be permitted to renew their qualified immunity argument on summary judgment.

C. **Supervisory liability**

In Count IV of the amended complaint, Stultz asserts a claim for supervisory liability under § 1983 against Holcomb, Hill, Thorpe, Penny, Connaughton. In order to prevail on such claim, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that h[is] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and
>
> (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)).

To the extent that Stultz has adequately pled violations of his rights to due process and free speech, the court concludes that the allegations in the amended complaint are sufficient to state a claim for supervisory liability against the named defendants. Accordingly, the defendants' motion to dismiss will be denied with respect to this claim.

D. **Aubrey Layne**

Stultz's constitutional claims under § 1983 are also asserted against Aubrey Layne, the current Secretary of Transportation. It is undisputed that Layne's term of office did not begin until January of 2014, nine months after Stultz was terminated. Nonetheless, Layne is named as a defendant "in his official capacity only," based on the assertion that Layne "maintains the authority to provide prospective injunctive relief," including reinstatement. Am. Compl. ¶ 20.

15

The court agrees with Layne that he cannot be held liable under § 1983 merely because of his current position as the Secretary of Transportation. It is well settled that "vicarious liability is inapplicable to § 1983 suits" and, thus, that public officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, 556 U.S. at 676 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Instead "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.; see also Shaw, 13 F.3d at 799. Given the absence of any assertion that Layne was involved in the alleged violations Stultz's constitutional rights, the claims against Layne must be dismissed.

## II. Claims under Title VII

In Count II of the amended complaint, Stultz asserts claims of retaliation under Title VII. In addition to prohibiting discrimination on the basis of an employee's race, color, religion, sex, or national origin, Title VII makes it unlawful for an employer to retaliate against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

In this case, Stultz claims that the Commonwealth of Virginia and the DMV terminated him in retaliation for opposing discriminatory employment actions taken against ASAC Supinger on the bases of gender, race, and/or national origin, as well as for participating in Supinger's administrative proceedings under Title VII. For the reasons stated during the hearing on the defendants' motion to dismiss, the court is convinced that Stultz's allegations in this regard are sufficient to state a claim for retaliation under Title VII.

16

To the extent Stultz also alleges that the DMV "retaliate[d] against [him] for his opposition and refusal to participate in violating Supinger's First Amendment rights," Am. Compl. ¶ 373, the court agrees with the defendants that such allegations do not implicate Title VII and may not be considered in connection with Stultz's Title VII retaliation claim. Accordingly, the defendants' motion to dismiss will be granted in part and denied in part with respect to Count II.

### III. Claim under the Driver's Privacy Protection Act

In Count V of the amended complaint, Stultz asserts a claim under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725, against Holcomb and Hill. Stultz alleges that Holcomb and Hill violated the DPPA by providing personal information from Stultz's motor vehicle records, including his driver's license photograph, to members of the Capitol Police.

"The DPPA generally restricts state departments of motor vehicles ("DMVs") from disclosing personal information drawn from motor vehicle records." Gordon v. Softech Int'l, Inc., 726 F.3d 42, 45 (2d Cir. 2013). "Notwithstanding these default rules of non-disclosure, the DPPA identifies fourteen 'permissible uses' – exceptions from the default rule – for which personal information may be obtained, disclosed, used, or resold." Id. The permissible uses set forth in the DPPA "are not affirmative defenses for which a defendant carries the burden of proof; rather a plaintiff bears the burden of showing that the obtainment, disclosure, or use of personal information from [his] motor vehicle records was not for a purpose enumerated in [the statute]." Wootten, 2015 U.S. Dist. LEXIS 35949, at *46 n.11.

Upon review of the amended complaint, the court agrees with the defendants that Stultz has not sufficiently alleged that his DMV information was impermissibly disclosed to the Capitol Police. See 18 U.S.C. § 2721(b) (permitting "use by any government agency, including any court or law enforcement agency, in carrying out its functions"); see also Wootten, 2015 U.S. Dist.

17

LEXIS 35949, at *46 (holding that the disclosure of the plaintiff's DMV information to the Capitol Police, as described in the complaint, was a permissible use under the DPPA). Accordingly, the defendants' motion to dismiss will be granted with respect to this claim.

## IV. Claims under state law

In addition to his federal constitutional and statutory claims, Stultz asserts supplemental state law claims of tortious inference with contract expectancy and computer invasion of privacy.

### A. Tortious interference with contract expectancy

In Count VI of the amended complaint, Stultz asserts a claim for tortious interference with contract expectancy against Holcomb, Hill, Thorpe, and Penny. To support this claim, Stultz alleges that he received conditional offers of employment from the Bedford County Sheriff's Office and the Roanoke County Police Department; that the prospective employers contacted DMV as part of their background check and advised that Stultz had been given a conditional offer of employment; and that upon being contacted by the prospective employers, Holcomb, Hill, Thorpe, and Penny knowingly published and disseminated information regarding Stultz that they knew was false and defamatory, including statements regarding his credibility and integrity as a sworn officer; and that the dissemination of the false and defamatory statements induced the prospective employers to withdraw their conditional offers of employment.

To establish a claim for tortious interference with a business or contract expectancy, a plaintiff is required to show: (1) that he had a contract expectancy; (2) that the defendants knew of the expectancy; (3) that the defendants intentionally interfered with the expectancy; (4) that the defendants used improper means to interfere with the expectancy; and (5) that the plaintiff suffered a loss as a result of the defendants' disruption of the contract expectancy. Preferred Sys. Solutions, Inc. v. GP Consulting, LLC, 732 S.E.2d 676, 688 (Va. 2012). Improper means used to

18

interfere with a contract expectancy "may include . . . misrepresentation or deceit, [or] defamation . . . ." Duggin v. Adams, 360 S.E.2d 832, 836 (Va. 1987).

In moving to dismiss Stultz's tortious interference claim, the defendants argue that Stultz is unable to prove that any of the defendants intentionally interfered with his ability to obtain employment with the prospective employers. The defendants contend that Stultz, himself, initiated the communications between the DMV and the prospective employers by listing the DMV as his previous employer, and that he subsequently signed release forms that authorized the prospective employers to obtain information from the DMV regarding his termination. To support these arguments, the defendants rely on a number of exhibits that are not referenced in the complaint, and which Stultz maintains are an incomplete record of the communications between him, his attorneys, and the defendants. Under these circumstances, the court is of the opinion that the defendants' challenges to the merits of the tortious interference claim are better suited for summary judgment, and that they do not provide an appropriate basis for dismissal under Rule 12(b)(6). Accordingly, the defendants' motion will be denied with respect to this claim.

### B. Computer invasion of privacy

In his final claim, Stultz alleges that Holcomb and Hill used a computer or computer network to examine records containing Stultz's personal information, in violation of Virginia Code § 18.2-152.5. Section 18.2-152.5 provides, in relevant part, that "[a] person is guilty of the crime of computer invasion of privacy when he uses a computer or computer network and intentionally examines without authority any employment, salary, credit or any other financial or identifying information . . . relating to any other person" Va. Code § 18.2-152.5(A). "While that statute is a criminal statute, Virginia Code section 18.2-152.12 grants civil recourse to a party

19

aggrieved under section 18.2-152.5." S.R. v. Inova Healthcare Servs., 49 Va. Cir. 119, 128 (Va. Cir. Ct. 1999).

The court agrees with the defendants that Stultz has failed to state a plausible claim for relief under this statute. While Stultz asserts, in a conclusory fashion, that his superiors used a computer to examine his personal records without authority, the amended complaint lacks sufficient factual allegations "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678 (emphasizing that a complaint must contain more than a "formulaic recitation of the elements of a cause of action . . . [or] naked assertion[s] devoid of further factual enhancement"). Consequently, the court will grant the defendants' motion with respect to Count VII.

## Conclusion

For the reasons stated, the defendants' motion to dismiss will be granted in part and denied in part. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 5th day of August, 2015.

/s/ Glen Conrad
Chief United States District Judge