**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **DAVID L. STULTZ,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:13-cv-589** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COMMONWEALTH OF VIRGINIA, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff David L. Stultz ("Stultz") filed this action in 2013 related to grievances involving his employment and discharge with the Virginia Department of Motor Vehicles. Following a settlement, Stultz moves for an award of attorneys' fees in which he contends that his counsel "has had to work a staggering number of hours and suffer great expense to vindicate" his civil rights. Dkt. No. 586, at 1. The question is whether the work of Stultz's counsel to secure a settlement of his claims, after five years of litigation, can justify an award of fees and costs totaling $1,870,722.19. Stultz accurately characterizes this case as a "protracted legal battle." However, that description does not, in turn, justify the fee award sought.

In his comments[1] on the 2015 amendments to the Federal Rules of Civil Procedure, Chief Justice John Roberts explained that dispute resolution used to be governed by duels, which had their own sets of rules but resulted in much more dismal outcomes. So as to avoid litigation "degenerat[ing] into wasteful clashes," Rule 1 placed on lawyers the obligation to control the expense and time demands of litigation, which would otherwise be stymied by "antagonistic

---

[1] 2015 Year-End Report on the Federal Judiciary, https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf.

1

tactics, wasteful procedural maneuvers, and teetering brinksmanship." Chief Justice Roberts observed that the Rules "require a genuine commitment, by judges and lawyers alike, to ensure that our legal culture reflects the values we all ultimately share." In the end, the Rules charge counsel to "affirmatively search out cooperative solutions, chart a cost-effective course of litigation, and assume shared responsibility with opposing counsel to achieve just results." Counsel on both sides failed to embrace these obligations, and as a result, much of the effort which Stultz's counsel now includes as part of the fee petition was not reasonably necessary.

There can no doubt that this case and its companions[2] were contentious—from both sides—and required extensive discovery and numerous motions. However, 42 U.S.C. § 1988 does not compensate attorneys for unnecessarily litigious or vexatious behavior.[3] For example, Stultz moved to strike Defendants' brief in opposition to his fee petition (Dkt. No. 591). Defendants timely filed their brief in opposition, but three days later submitted a slightly amended version to correct a mathematical error in their expert's fee calculation. Dkt. No. 593. Stultz then vehemently objected to Defendants' revised brief when, in fact, the correction yields a $15,000.00 *greater* fee award for Stultz than what was recommended in Defendants' initial submission. Section 1988 permits for an award of attorneys' fees that is *reasonable*. The party moving for attorneys' fees bears the burden to demonstrate that the amount sought is reasonable, and in the end, Stultz simply fails to justify his request for the amount he seeks.

---

[2] See Wooten v. Commonwealth of Virginia, 6:14-cv-13, and Supinger v. Commonwealth of Virginia, 6:15-cv-17. All three cases arose out of similar facts surrounding the respective plaintiffs' employment and termination at the DMV, and all asserted very similar claims.

[3] Both sides of this litigation seemed to disregard the guidance under Federal Rule of Civil Procedure 1, which states that courts and litigants should employ the Federal Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding."

## I.    <u>Factual and Procedural Background</u>[4]

Plaintiff David L. Stultz was a former Special Agent in Charge at the Virginia

Department of Motor Vehicles ("DMV") Lynchburg office. Stultz supervised a number of

employees in his role, including Robert Supinger, Anastasia Wootten, and Jennifer Dawson.

Stultz was involved in various investigations arising out of his employees' complaints to the

DMV about Dawson and the reorganization of the DMV's Law Enforcement Services division.

After Dawson and Wootten got into an alleged physical altercation, the DMV conducted an

investigation in early 2013 regarding how the Dawson situation was handled and whether Stultz,

Supinger, and Wootten engaged in misconduct. Stultz was suspended on March 5, 2013, and

terminated on April 16, 2013, for alleged misconduct. Supinger and Wootten were similarly

suspended and terminated. Stultz filed a termination grievance under Virginia's Law

Enforcement Officers Procedural Guarantee Act (LEOPGA)[5] in October 2013, which was

denied. Following his termination, Stultz applied for other law enforcement positions, but was

ultimately unable to find employment and awarded unemployment benefits.

Stultz initially filed this action in December 2013 against the DMV as a single-count

cause of action for unlawful retaliation under Title VII of the Civil Rights Act. Dkt. No. 1. In the

eleven months that followed, the parties engaged in extensive discovery, which included motions

to preserve evidence, motions to compel, requests to exceed discovery limits, and subpoenas.

The parties also participated in an unsuccessful mediation attempt.

As frequently happens after parties engage in substantial discovery, a plaintiff will seek

---

[4] The facts of this case are fully set forth in the District Court's Memorandum Opinion dated August 26, 2016. Dkt. No. 519.

[5] The Law Enforcement Officers Procedural Guarantee Act (LEOPGA), Va. Code §§ 9.1-500, <u>et seq.</u>, guarantees law enforcement officers certain procedural rights whenever the officer is dismissed, demoted, suspended, or transferred for punitive reasons.

leave of court to file an amended complaint, perhaps adding new causes of action or new defendants. Typically an amended complaint will better focus the case, especially when the parties have had the benefit of twelve months of discovery. Here, however, Plaintiff completely forsook the dictates of Rule 8 of the Federal Rules of Civil Procedure, which instructs that a cause of action should be set forth in "a short and plain statement"; instead, Stultz submitted an eighty-page Amended Complaint asserting seven causes of action against eleven new defendants.[6] Stultz sought injunctive relief, damages, back pay and front pay, pre-judgment interest, and attorneys' fees and costs. Dkt. No. 152.

The parties engaged in yet more discovery, depositions, and motions before Defendants filed an omnibus motion for summary judgment. Stultz met with only partial success at the summary judgment stage, as the District Court dismissed all but the procedural due process claim under LEOPGA (including any supervisory liability), the First Amendment retaliation claim, and the tortious interference claim against Jeannie Thorpe.[7] The District Court denied qualified immunity as to the procedural due process and First Amendment claims. Dkt. No. 519. Undeterred, Defendants appealed the denial of qualified immunity to the Fourth Circuit, which

---

[6] The claims included: Count I – due process violations under 42 U.S.C. § 1983; Count II – Title VII retaliation; Count III – unlawful retaliation under the First Amendment; Count IV – supervisory liability; Count V – violations of the Driver's Privacy Protection Act; Count VI – tortious interference with contractual expectancy; and Count VII – computer invasion of privacy in violation of Virginia state law. Dkt. No. 152. The District Court granted Defendants' motion to dismiss Count I in part, Count II in part, Count V, and Count VII, and the § 1983 claims against individual Defendant Aubrey Layne. Dkt. No. 252.

[7] The District Court granted summary judgment for Stultz for the LEOPGA procedural due process claim against Richard Holcomb, Jeannie Thorpe, and Joseph Hill (but not Thomas Penny), and rejected Defendants' qualified immunity defense. Dkt. No. 519. The Court granted summary judgment for Defendants for the remaining claims under Count I. Id. The Court denied Defendants' motion for summary judgment on Count III, again rejecting Defendants' qualified immunity defense, and denied their motion on Count IV. Id. The Court granted summary judgment for Defendants on Count II and for Defendants Holcomb, Hill, and Penny on Count VI. Id. The Court denied summary judgment for Defendant Thorpe for Count VI. Id. The Court later denied Thorpe's motion for reconsideration. Dkt. No. 567.

affirmed the District Court and remanded the case for damages.[8] Thereafter, the parties reached a confidential settlement following mediation to resolve all claims. The parties agree that Stultz is the prevailing party, thus entitling him to attorneys' fees under 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d). See Dkt. No. 582.

The District Court has referred to me Stultz's motion for attorneys' fees and costs. Dkt. No. 586. Stultz now seeks $1,639,670.00 in attorney's fees and $231,052.19 in costs, for a total award of $1,870,722.19, with prejudgment interest.[9] Dkt. No. 592. The petition includes fees for Stultz's original counsel.[10]

---

[8] The Fourth Circuit instructed that the First Amendment claim be held in abeyance pending further proceedings on the procedural due process claim. Dkt. No. 541.

[9] Stultz originally sought $1,702,802.50 in attorneys' fees and $277,866.59 in costs (Dkt. No. 586, at 24), but revised his requests in his reply brief.

[10] Dale Webb and Melvin Williams originally represented Stultz together. Dkt. No. 1. Melvin Williams withdrew from his representation in January 2016 after developing a conflict of interest. Dkt. No. 313. Audra Marcum (or Audra Dickens, as of July 2015) began work on this case in December 2014 and withdrew in February 2017. Dkt. Nos. 149, 537. Kevin Gick began work on this case in March 2018. Dkt. No. 561.

| Attorney | Hours Billed | Rate | Total Fees Sought |
|---|---|---|---|
| Dale W. Webb | 2308.7 | $350.00 | $808,045.00[11] |
| Hours for TI[12] | 32.7 | | $11,445.00 |
| Audra M. Dickens | 1940.7 | $225.00 | $436,657.50 |
| Hours for TI | 14.8 | | $3,330.00 |
| Kevin M. Gick | 258.3 | $225.00 | $58,117.50 |
| Hours for TI | 32.4 | | $7,290.00 |
| Paralegal Services | 1181.3 | $125.00 | $147,662.50 |
| Hours for TI | 4.4 | | $550.00 |
| | | | |
| Melvin E. Williams[13] | 369.1 | $350.00 | $129,185.00 |
| Micah D. Wright | 99.5 | $225.00 | $22,387.50 |
| | | | |
| | | **TOTAL** | **$1,624,670.00** |
| Fee Petition | - | - | $15,000.00[14] |
| | | **TOTAL with FP** | **$1,639,670.00** |
| Costs | - | - | $231,052.19 |
| | | **TOTAL with Expenses** | **$1,870,722.19** |

Defendants DMV, Richard Holcomb, Joseph Hill, Jeannie Thorpe, Ronna Howard,

Thomas Penny, and William Anderson (collectively, "Defendants") partially oppose the motion

for attorneys' fees and expenses and request that the Court substantially reduce any award. Dkt.

No. 589. Having considered the record, legal arguments submitted, and applicable law, I

recommend that the District Court **GRANT in part** Stultz's Motion for Attorneys' Fees and

Costs (Dkt. No. 586), and award $792,526.10 in attorneys' fees and $146,217.29 in costs, for a

total award of $938,743.39.

## II.   Analysis

"In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title .

---

[11] Stultz's revised lodestar chart incorrectly calculates multiple figures. See Dkt. No. 592, at 21.

[12] "TI" represents tortious interference.

[13] In his revised lodestar chart, Stultz reduced the total amount of hours spent by Melvin Williams and his firm to 468.6 hours from 481.6 hours to eliminate the thirteen hours billed by Mr. Williams's paralegals. Dkt. No. 592, at 21.

[14] Defendants contested the $35,972.50 that Stultz initially sought for preparing the fee petition (Dkt. No. 586, at 11), and asked that the Court award no more than $15,000.00 (Dkt. No. 589, at 18). Stultz agreed to a $15,000.00 cap for preparing his fee petition, so I will adopt $15,000.00 as the appropriate award for the time spent on the fee petition. As a flat fee, it will not be included in any percentage reductions.

. . the court, in its discretion, may allow the prevailing party . . . reasonable attorneys' fee[s] as part of the costs." 42 U.S.C. § 1988(b). The prevailing party bears the burden of demonstrating that the amount of fees sought is reasonable. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The parties agree that Stultz is the prevailing party for purposes of an award of attorneys' fees and costs. See Dkt. Nos. 582; 586, at 4; 589, at 1.

## A. Lodestar Calculation

The Fourth Circuit follows a three-step process to determine a reasonable attorneys' fee award. McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014). First, the court determines the lodestar figure, which is calculated by multiplying the reasonable number of hours expended by the reasonable hourly rate. Id. Courts evaluate the reasonableness of the hours expended and rates sought on fee petitions under the lodestar method using the factors identified in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), as adopted by Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). See Robinson v. Equifax Info. Servs., 560 F.3d 235, 243–44 (4th Cir. 2009).[15] A strong presumption exists that a properly calculated lodestar figure is reasonable. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010). That presumption may be overcome only in rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee. Id. Second, the court subtracts fees for hours spent on unsuccessful claims related to successful claims. McAfee, 738 F.3d at 88. Finally, the court awards a percentage of the remaining amount, depending on the degree of success of the prevailing party's claims. Id.

---

[15] The Fourth Circuit has construed the Johnson factors as: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectation at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. Robinson, 560 F.3d at 243–44.

7

### i.    Hourly Rates

Stultz seeks rates of $350.00 per hour for attorneys Melvin Williams and Dale Webb; $225.00 per hour for attorneys Audra Dickens and Kevin Gick; and $125.00 for paralegal services. Dkt. No. 586, at 7. The hourly rate included in an attorneys' fees request must be reasonable, which is generally determined by the prevailing market rates in the relevant legal community for the type of work for which an award is sought. McAfee v. Boczar, 738 F.3d 81, 91 (4th Cir. 2013). The relevant community is usually that in which the district court sits. Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 179 (4th Cir. 1994). Determining the prevailing rate in the relevant community "may be established through affidavits reciting the fees of counsel with similar qualifications, information concerning fee awards in similar cases, and/or specific evidence of counsel's billing practice." Freeman v. Potter, No. 7:04cv00276, 2006 WL 2631722, at *4 (W.D. Va. Sept. 13, 2006) (citing Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987)).

This case was filed in the Roanoke Division of the Western District of Virginia; thus, the relevant market is Central and Southwest Virginia. Stultz supports his attorneys' rates by focusing on the attorneys' experience, customary fees for like work, and awards in similar cases. Dkt. No. 586, at 7–8. Stultz includes a number of affidavits from other employment law and civil litigation attorneys in the area, who all endorse $350.00 per hour for partner attorneys and $250.00 per hour[16] for associate attorneys as reasonable and consistent with the rates charged by employment lawyers in this District. Dkt. Nos. 586-3, at 3; 586-9; 586-10; 586-11.[17] Recent fee awards in the two companion DMV cases determined rates of $350.00 per hour for partner

---

[16] Stultz states in his brief that he seeks a rate of $250.00 per hour for associate attorneys. Dkt. No. 586, at 8 n.10. However, Stultz's own calculations and the declaration of his lead attorney, Dale Webb, indicate that he seeks compensation for an hourly rate of $225.00 for the associate attorneys. Dkt. Nos. 586, at 11; 586-1, at 4.

[17] Andrew D. Meyer, who provided an affidavit in support of Stultz's counsel's hourly rates, mistakenly identifies a different associate attorney not involved in this action.

attorneys and $225.00 per hour for associate attorneys to be reasonable. See <u>Lee Supinger v. Virginia</u>, Case No. 6:15-cv-00017, 2019 WL 1461071, at *2 n.2 (W.D. Va. Apr. 2, 2019) (affirming hourly rates of $350.00 and $225.00 for partner and associate attorneys, respectively); Plaintiff's Memorandum in Support of Motion for Award of Reasonable Attorney's Fees and Costs, <u>Wooten v. Commonwealth of Virginia</u>, Civil Action No. 6:14-cv-13 (W.D. Va. Jan. 13, 2017), Dkt. No. 243, at 3 (endorsing rates of $350.00 and $225.00 for partner and associate attorneys, respectively, in employment cases in the Western District of Virginia).

After reviewing fee awards in the companion cases, and taking into account employment law practice and civil rights cases in the Western District of Virginia, I find that hourly rates of $350.00 for Melvin Williams and Dale Webb, $225.00 for Audra Dickens and Kevin Gick, and $125.00 for paralegals are reasonable for work performed in this case.[18]

###### ii.    Reasonable Hours

Defendants argue that Stultz's fee request should be drastically reduced because he failed to meet his burden of establishing a proper lodestar figure. Defendants assert that the time and labor Stultz's counsel expended was not reasonable; Stultz impermissibly seeks full compensation for travel and clerical tasks; this case did not involve novel or difficult questions entitling Stultz to an extraordinary fee award; and the fees in this case are exorbitantly higher than attorneys' fee awards in similar cases.

###### 1.   Block Billing, Vagueness, and Billing Duplication

Defendants contend that the fact that Stultz seeks compensation for 6,598.5 hours for total work performed on this case demonstrates that the time and labor spent was not reasonable. While Stultz has the burden of proving that his fee request is reasonable, the Court is having difficulty assessing whether his attorneys spent an appropriate amount of time on the case

---

[18] Defendants do not contest the proposed hourly rates for Stultz's attorneys. Dkt. No. 589, at 8 n.9.

because of the extensive vagueness, block billing, and duplication in the billing records.[19]

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Courts have found that "[l]umping and other types of inadequate documentation are a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case." Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). "The court's role is not to labor to dissect every individual entry to hypothesize if the different tasks in the same entry could reasonably result in the requested time." Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012). Courts reduce the fee award in such circumstances by either identifying specific hours that are not sufficiently documented or by reducing the overall fee award by a fixed percentage based on the court's familiarity with the case, its complexity, and the counsel involved. Id.

There can be no doubt that this case required significant time and labor, but the billing records supporting Stultz's fee petition make it too difficult to tell whether the time he seeks compensation for is reasonable. First, Stultz's counsel repeatedly engaged in "block billing," or the practice of lumping multiple tasks into the same billing entry. "Inadequate documentation includes the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task." Guidry, 442 F. Supp. 2d at 294. Courts in the Fourth Circuit have routinely held that block billing does not provide a court

---

[19] In the Frankl Miller Webb & Moyers (FMWM) records, the following abbreviations and numbers denote the specific billing individual (Dkt. No. 586-1, at 8–9):
- Attorney Dale Webb is "DWW" or "3"
- Attorney Audra Dickens is "AMM" or "17"
- Attorney Kevin Gick is "KMG" or "9"
- Paralegal Tammie Balmer is "TDB" or "8"
- Paralegal Laura Seifried is "LBS" or "18"
- Paralegal Emily Lunceford is "EAL" or "16"
- Paralegal Matthew Westmoreland is "MW" or "10"

with a sufficient breakdown to support an attorneys' fee request. "Lumping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case." Id.

Stultz's counsel repeatedly combined multiple tasks into one billing entry. For example, Mr. Webb billed 4.50 hours for "Preparation of Motion for Summary Judgment re: Due Process including case law research, document review and added revisions" (Dkt. No. 586-4, at 27); 2.30 hours for "Multiple conversations with Rab, Williams & Court re mediation scheduling of case and discovery issues" (id. at 28); 6.80 hours to "Conference with client re review of search terms used for data base and response to Ryan Hardy and review and response to pending motions" (id. at 54); 10.80 hours for "Conference with David Stultz; discovery responses; review documents to place in case manager for FWA time line for outline of cause of action" (id. at 66); 5.60 hours for "Conference with client re complete Declaration of Senator Deeds with attached exhibits; contact Tim Sadler re witness development; and respond to discovery notes for witnesses" (id. at 74); 8.80 hours for "Preparation for depositions of Cheryl Sanders and James Womack and outline" (id. at 94); 13.20 hours to "Continue preparation of opposition to summary judgment ECF 466 and meeting with client to prepare responsive exhibits (126) to attach to brie[f]" (id. at 120); 11.80 hours for "Preparation of objections to witnesses; exhibit lists; and jury instructions" (id. at 132); and 6.90 hours for "Preparation of argument before the 4th Circuit; including review of DMV reply brief; and prepare responsive argument" (id. at 154). Paralegal Tammie Balmer also lumped multiple tasks together; for example, in one instance, she billed 9.20 hours for "Preparation for mediation including document reviews, creating tables, calculating various demands, calculating benefits, reviewing demands from opposing counsel, discussing strategy's, etc." Id. at 185. I have not set forth exhaustively the block billing in the fee petition, but these

examples are demonstrative of counsel's block billing practice. Accordingly, I recommend a reduction in the fees awarded because counsel's block billing does not permit the Court to analyze whether all of the time billed was reasonable.

Additionally, many of the billing entries appear excessive on their face because they are too vague to understand. "[T]he use of excessively vague time descriptions is a generally disfavored billing practice. Such descriptions 'inhibit the court's reasonableness view' and also 'justify a percentage reduction in the fee award.'" Brown v. Mountain View Cutters, LLC, 222 F. Supp. 3d 504, 514 (W.D. Va. 2016) (citing Ashley II of Charleston, LLC v. PCS Nitrogen, Inc., No. 2:05–2782, 2015 WL 4469765, at *10 (D.S.C. July 21, 2015) (citing Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO v. Port Auth. of N.Y. and N.J., 180 F.R.D. 251, 253 (S.D.N.Y. 1998) (reducing award by 20% for vague time entries, such as "preparation for trial" and "research and draft papers"))); accord Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 180 (4th Cir. 1994) ("We have frequently exhorted counsel to describe specifically the tasks performed, a practice which is especially necessary when we review an award in a case where the plaintiff has not prevailed on all the claims.").

Too many tasks in the billing entries are vaguely described as "preparation." Mr. Webb regularly "prepared" or "reviewed" without much additional explanation. For example, he billed 11.50 hours for "Final Preparation of Summary Judgment Brief revisions and edits to brief review of all case citations" (Dkt. No. 586-4, at 27); 0.20 hours for "Review of order" (id. at 44); at least 75.9 hours for "preparation" or "continued preparation" of Stultz's opposition to summary judgment (id. at 119–120, 122); 11.70 hours for "Preparation for Summary Judgment hearing" (id. at 126); pages of entries for "preparation" of Stultz's brief to the Fourth Circuit (id. at 142–46); and at least 57.2 hours for some type of "preparation" for the Fourth Circuit oral

12

argument (id. at 154). These entries provide no insight as to the particular tasks performed beyond preparing, nor do they indicate the specific reasons for such time spent.

Other entries are just plain confusing. For example, Mr. Webb billed 10.60 hours for "Research to support and preparation of Motion to Compel Discovery and Motion to revise database due to Defendant's misapplication of search meeting with client, Mr. Stultz." Id. at 33. He also billed 8.80 hours for "Continued preparation of reply brief in support of Motion for summary judgment (re: ECF 222) research and response to defendant's argume[nt] that pre-termination procedures satisfy due process." Id. at 32. Paralegal Balmer also created some confusing entries, including 3.50 hours for "Review of over 200 ECF filings to determine if all Plaintiff's Motions have had a Memo in Support filed on each as following the PTSO recently filed giving a 14 day deadline to do so if not done already, printing out Motions without memo's for attorney to review at next meeting." Id. at 175. The vague and confusing descriptions weigh in favor of reducing the fee request because the Court cannot determine what the attorneys were billing for.

Finally, the billing records show that Stultz's counsel unnecessarily duplicated some of their billing efforts. When reviewing the hours expended, a court must focus on the reasonableness of the division of responsibility among counsel. A reduction of hours is warranted only if counsel unreasonably duplicate each other's work. See Project Vote, 887 F. Supp. 2d at 714. "[T]here is nothing inherently unreasonable about a client having multiple attorneys." McAfee v. Boczar, 906 F. Supp. 2d 484, 501 (E.D. Va. 2012), vacated and remanded on different grounds, 738 F.3d 81 (4th Cir. 2013), as amended (Jan. 23, 2014) (quoting Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988)). The Fourth Circuit has noted its sensitivity to "the need to avoid use of multiple counsel for tasks where such use is not

justified by the contributions of each attorney" because "[g]eneralized billing by multiple attorneys on a large case often produces unacceptable duplication." Rum Creek, 31 F.3d at 180.

Over the course of the litigation, it appears that Stultz's counsel billed multiple times for single events. For example, on August 6, 2015, both Mr. Webb and Ms. Dickens billed 1.80 hours for appearing at a hearing on discovery motions. Dkt. No. 586-4, at 39. On December 17, 2015, both lawyers billed time to prepare for and attend another discovery hearing, and to conference with their client afterward. Id. at 56. Further, Mr. Webb, Ms. Balmer, and Mr. Gick billed 7.50 hours to attend the August 29, 2018 mediation. Id. at 185. Having multiple attorneys or staff at hearings or other proceedings when the proceedings warrant only one attorney tends to be duplicative.

Other duplications include Ms. Dickens billing three times for one telephone conference with the court on February 18, 2016 (id. at 70); Messrs. Webb and Gick and Ms. Balmer billing 0.90 hours for a strategy meeting among the three of them, with Ms. Balmer actually billing it twice (id. at 180); Messrs. Webb and Gick and Ms. Balmer each billing 1.20 hours for a telephone conference with the court on October 2, 2018, and then at least 1.30 hours for a meeting to discuss strategy after the call (id. at 194–95); Messrs. Webb and Gick and Ms. Balmer billing for a meeting with Stultz (id. at 195–96); Mr. Gick and Ms. Balmer both billing 1.60 hours for another telephone conference with the court on October 4, 2018 (id. at 196–97); and, Mr. Webb billing 4.50 hours twice for the same meeting with his client (id. at 154).

This litigation continued for years and amassed 593 docket entries in this court. Failing to specifically describe the tasks the attorneys performed requires the court to "labor to dissect" the individual entries to see how they match up with the various claims and phases of litigation. The Fourth Circuit in Rum Creek recognized this problem and implored attorneys to carefully record

their time, particularly in this type of case in which the litigation was extensive and Stultz did not

prevail on all of his claims. The Court cannot tell whether the time spent by Stultz's counsel is

reasonable; accordingly, I recommend a 15% reduction in the overall amount of hours Stultz

seeks to compensate in this case for the inclusion of block billing, vague time entries, and

unnecessary duplication of tasks.

### 2.  Clerical Tasks and Travel Costs

Defendants argue that Stultz's counsel should not be compensated for all of the paralegal

time spent on the case because a court should not award fees for purely clerical tasks. Dkt. No.

589, at 15. Stultz replies that the Court cannot adopt this conclusion because there is a "lack of

proof" that all paralegal work is not compensable. Dkt. No. 592, at 16. "[I]n this circuit . . .

purely clerical tasks are ordinarily part of a law office's overhead, (which is covered in the

hourly rate), [and] they should not be compensated for at all." Brown v. Mountain View Cutters,

LLC, 222 F. Supp. 3d 504, 514 (W.D. Va. 2016) (quoting Two Men & A Truck/Int'l, Inc. v.

Mover, Inc., 128 F. Supp. 3d 919, 929 (E.D. Va. 2015)); see also Missouri v. Jenkins by Agyei,

491 U.S. 274, 288 n.10 (noting that "purely clerical or secretarial tasks should not be billed at a

paralegal rate"). Examples of clerical tasks include filing documents with the court, issuing

summonses, scanning and mailing documents, reviewing files for information, printing

pleadings, organizing documents, creating notebooks or files, assembling binders, emailing

documents, and making logistical telephone calls. Two Men & A Truck, 128 F. Supp. 3d at 929–

30 (citing cases).

Stultz misconstrues Defendants' argument, alleging that Defendants assert that all

paralegal time is non-compensable. However, Defendants argue for a reduction in paralegal fees

because the paralegal work included purely clerical tasks, which are not compensable. Stultz

acknowledges this fact and attempted to eliminate the clerical paralegal fees in his reply brief (Dkt. No. 592-14), but he does not go far enough. The billing records still show that much of the work done by paralegals at FMWM was purely clerical, and thus not compensable. For example, paralegal Laura Seifried billed for making copies, preparing tabs and organizing folders, indexing, printing, checking dockets, emailing documents, and mailing (see, e.g., Dkt. No. 586-4, at 15, 17, 22, 29, 53, 55); paralegal Emily Lunceford billed for preparing documents for bates stamping (id. at 85–86, 88–89); and Ms. Balmer billed for telephone calls, scanning, and receiving and reviewing email (id. at 141, 143, 146–49, 151–54, 157–75, 180, 182, 184–87, 192–93, 197, 199–200).

The Court is not required to "labor to dissect" each individual time entry for each paralegal, but the types of clerical tasks that appear on the face of the billing records, and billed at the paralegals' hourly rates, justify a 50% reduction in the paralegals' billable hours. See Brown, 22 F. Supp. 3d at 514–15 (reducing the number of hours billed by the paralegal by 20% to account for clerical tasks).

Defendants also argue that the Court should reduce the travel costs for Stultz's counsel. Dkt. No. 589, at 15. Defendants propose a reduction of 50% for travel costs, or $22,445.00. Dkt. No. 589-4, at 10.[20] Courts routinely compensate attorneys for travel time, but at a reduced rate. See, e.g., Prison Legal News v. Stolle, 129 F. Supp. 3d 390, 403–04 (E.D. Va. 2015) (reducing hourly rate for traveling from $450.00 to $200.00, which "[struck] an appropriate balance between the task billed, driving a car (which requires no legal skills of any kind), and counsel's opportunity costs of such travel-time"); see also Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012) (holding that "counsel should not recover their full market

---

[20] Defendants estimate that Stultz seeks compensation for $44,890.00 total for travel time, which Stultz does not challenge. Dkt. No. 589-4, at 24–25.

rate for travel" and considering in overall reduction of fee award); Rosenberger v. Rector &

Visitors of Univ. of Va., Civ. A. No. 91-0036-C, 1996 WL 537859, at *6 (W.D. Va. Sept. 17,

1996) (holding counsel should not recover same fee for travel time as for active legal work and

reducing fee award accordingly).

Stultz offered to reduce by 50% his travel hours for non-party depositions, which would

amount to a $15,725.00 reduction; however, he argues that there should be no reduction for

travel related to Defendants' depositions. Dkt. No. 592, at 16–17. Stultz asserts that Defendants

insisted on being deposed in Richmond instead of in Roanoke, which is the division in which

Stultz filed his lawsuit and where his counsel is located. Id. at 17. However, it is customary for

defendants to be deposed at their residences or places of business. See Rapoca Energy Co. v.

Amci Exp. Corp., 199 F.R.D. 191, 193 (W.D. Va. 2001) (holding there is a presumption that a

defendant be deposed in the district of his residence or principal place of business). Furthermore,

Stultz sought to depose multiple DMV employees who were all located in Richmond. It was thus

more prudent and cost-saving for one party to travel to Richmond, as opposed to multiple parties

traveling to Roanoke. See Dkt. No. 592-2. Accordingly, I recommend a reduction of 50% for all

of Stultz's counsel's travel hours. See Doe v. Alger, Civil Action No. 5:15-cv-00035, 2018 WL

4655749, at *8 (W.D. Va. Sept. 27, 2018) (adopting finding of 50% reduction for compensable

travel time). Thus, I will deduct an additional $6,720.00 in addition to Stultz's voluntary

reduction of $15,725.00, resulting in a total deduction for travel time of $22,445.00 (or 50%).

### 3.  Excessiveness and Overlap

Defendants argue that, overall, the time and labor expended by Stultz's counsel was not

reasonable. Unsurprisingly, Stultz asserts that the "gargantuan" record and "staggering" docket

required his counsel to work a "crushing amount" to process the record, develop appropriate

legal theories, and win this case. Stultz asserts that his counsel "had no choice but to work an extraordinary number of hours." Dkt. No. 586, at 13. This case took over five years to resolve and was hard-fought on both sides, but Stultz's staggering fee request demonstrates that Stultz's attorneys did not handle the case efficiently. It also shows the failure of counsel on both sides to embrace Rule 1 of the Federal Rules of Civil Procedure, which prescribes the purpose of the Rules: to "secure the just, speedy, and inexpensive determination of every action and proceeding." Stultz's counsel's billing records demonstrate that this case was anything but speedy and inexpensive.

Furthermore, it is important to recognize that billing practices in the private sector may differ from those acceptable for work in a case which is compensable under § 1988, as a fee-shifting statute requires transparency and consistency so that a court can determine the appropriate fee to award to a prevailing party. See, e.g., Guidry v. Clare, 442 F. Supp. 2d 282, 295 (E.D. Va. 2006) (reducing lodestar figure because the submitted fee claims were "too inadequately detailed to permit a confident assessment of the reasonableness of the time spent"). However, I do acknowledge Stultz's argument that Defendants' conduct in this case was also vexatious. While normally I would not award such litigious conduct from Stultz, Defendants brought much of the cost on themselves by the way in which they elected to defend this case. Accordingly, in considering the behavior on both sides that resulted in excessive billing practices, I recommend a further overall reduction of 20% as set out below.[21]

Phase 1: Pre-Filing Activities and Filing Original Complaint[22]

Defendants contend that Stultz failed to omit from his fee request the hours he spent on

---

[21] Stultz breaks down FMWM's time records into six separate phases. See Dkt. No. 586-1, at 5–6. I have used some of those phases to analyze the hours billed to the extent that they are accurate or helpful in demonstrating Stultz's excessive billing practices. I recommend an overall reduction and not phase-by-phase, unless otherwise noted.

[22] Stultz defines Phase 1 as March 11, 2013 to December 10, 2013. Dkt. No. 586-1, at 5.

state and administrative proceedings prior to filing the federal lawsuit. Dkt. No. 589, at 13. Stultz represented that he eliminated time in Phase 1 for administrative and state court proceedings, with the exception of specific preparation of defense folders to the Written Notices for Termination because that work was directly carried over and used throughout the federal lawsuit. Dkt. No. 586-1, at 7–8.[23]

Some services performed by counsel before a lawsuit formally commences are expended on the litigation and are thus compensable, including work associated with developing the theory of a case. See Prison Legal News v. Stolle, 129 F. Supp. 3d 390, 398–99 (E.D. Va. 2015) (citing Webb v. Bd. of Educ. of Dyer Cnty., Tenn., 471 U.S. 234 (1985)). Courts have recognized that investigation, preliminary legal research, drafting demand letters, and working on the initial complaint are standard preliminary steps toward litigation. See id. at 399 (citing Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Emp'rs, 571 U.S. 177, 189 (2014)).

The 33.5 hours—amounting to $11,725.00—that Stultz's counsel billed in Phase 1 do not all seem to relate to the "specific preparation of defense folders." For example, a conference with the Virginia Attorney General and associated travel costs, and preparation of a petition to Roanoke City Circuit Court, are not "reasonably tied" to Stultz's federal litigation. See id. Similarly, Stultz's defense of his original written notices, which was well in advance of filing the federal lawsuit, appear to be tied to defending the administrative proceedings. See Dkt. No. 586-4, at 4. Additionally, it is unclear what some time entries in Phase 1 even refer to like, for

---

[23] In their determination of the amount of time Stultz spent on state court and administrative proceedings, Defendants include billing entries from time spent after Stultz filed his complaint on December 10, 2013. See Dkt. No. 589-4, at 26–28. In his reply brief, Stultz argues that he wrote off certain billing entries identified by Defendants for time spent after Stultz filed his complaint. Dkt. No. 592-1, at 12–13. For ease of analysis, I do not adopt Defendants' reduction and chart for the state and administrative proceedings and instead adopt Stultz's Phase 1 to analyze time spent on state and administrative proceedings before filing his Complaint.

example, "Review with client defense to grouping charges on sharing video counseling with Supinger." Id. Because I cannot sufficiently determine which time entries from Phase 1 are reasonably tied to Stultz's federal litigation, I recommend a 75% reduction in the hours spent on Phase 1.

Amended Complaint

The amount of hours Stultz's counsel spent to draft the Amended Complaint demonstrates that Stultz's counsel did not handle his case efficiently from the outset. Stultz amassed 91 hours[24] of work on the Amended Complaint—which, for perspective, results in a bill of $31,850.00 to his client. What initially began as a single-count Title VII retaliation claim against one defendant evolved into seven claims (with certain claims having multiple sub-claims) against eleven defendants. The Amended Complaint itself was 80 pages long.

The records on their face show that Stultz's counsel used the proverbial "kitchen sink" approach instead of carefully crafting a complaint to meet the appropriate pleading standard. A complaint need show "only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible when a plaintiff pleads sufficient factual content to allow a court to draw the reasonable inference that the defendants are liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A lawyer's job is to draft a complaint that meets the plausibility requirements by alleging enough facts to nudge a claim across the line from conceivable to plausible. Id. at 680 (citing Twombly, 550 U.S. at 570).

---

[24] From May to December of 2014, Stultz's counsel spent: 4.70 hours on May 13 (Dkt. No. 586-4, at 13); 10.1 hours on May 15 (id.); 24.80 hours between October 7 and October 9 (id. at 18); 8.50 hours on October 27 (id. at 19); 7.50 hours on October 30 (id. at 20); 9.50 hours on November 6, 5.40 hours on November 8, and 9.30 hours on November 15 conferencing with Stultz for the amended complaint (id.); and 11.20 hours on November 16 to conference with Stultz and draft the complaint (id. at 21, which is also block billing). Additionally, multiple entries read simply, "Preparation of Amended Complaint," which is noticeably vague. Id. at 18–20.

Here, the District Court dismissed roughly half of Stultz's new claims, and only a handful of his new claims ultimately survived summary judgment. At the end of the day, the meat of this case came down to two claims: the due process and First Amendment retaliation claims. An attorney should not be compensated for all of the work conducted on a complaint in which he alleges any conceivable claim, especially when he ultimately prevails on only one or two claims. Cf. Sky Cable, LLC v. Coley, Civil Action No. 5:11cv00048, 2014 WL 4407130, at *10–*11 (W.D. Va. Sept. 8, 2014) (holding preparation of amended complaint to be compensable because plaintiff prevailed on new claims asserted against one defendant, and added new factual information that helped to prevail over another defendant; plaintiff also excluded from fee petition any hours for work on amended complaint that related to a defendant who was later dismissed).

Discovery Phase

Regarding Phase 2, Defendants argue that Stultz spent an excessive and unnecessary amount of time on pre-litigation discovery. Dkt. No. 589, at 10. Defendants point to Stultz's issuing forty subpoenas and seven discovery requests to Defendants, and allege that Stultz fails to prove that his extensive efforts to obtain documents from a host of state agencies contributed to his ultimate success on the relevant claims. Stultz characterizes his written discovery efforts as "titanic," and alleges that Defendants "completely inundated" him with documents. Dkt. No. 586, at 12. Defendants also argue that Stultz seeks compensation for time spent on unnecessary depositions, experts who were dismissed from the case, and filings with which he clogged the Court's docket. Dkt. No. 589, at 10–11.

Following the Amended Complaint, the parties engaged in a tumultuous discovery phase that resulted in overly expensive and burdensome proceedings. The discovery which ensued in

this action wholly failed to reflect the proportionality required under Rule 26 or the efficient resolution of disputes lauded in Rule 1. Rather, the attorneys allowed the discovery to define the action rather than permit the underlying facts to inform what was necessary. As one local judge previously observed:

> If there is a hell to which disputatious, uncivil, vituperative lawyers go, let it be one in which the damned are eternally locked in discovery disputes with other lawyers of equally repugnant attributes.

Crawford Constr. & Gen. Contractors, Inc. v. Kemp, 86 Va. Cir. 150, 2013 WL 7897902, at *1 (Va. Cir. Ct. 2013) (Weckstein, J.) (quoting Krueger v. Pelican Prods. Corp., No. 87–238S– A (W.D. Okla. Feb. 24, 1989)).

To begin, Stultz complains that he should be compensated for being "inundated" with documentation from Defendants. Dkt. No. 586, at 12. Perhaps Stultz may not have been "inundated" if he did not issue 40 subpoena duces tecum and seven discovery requests to obtain the documents produced in this case. See id. In his reply, Stultz alleges that certain records and evidence "were not being secured," which required him to make multiple discovery requests to obtain important evidence. Dkt. No. 592-1, at 5. Stultz fails to meet his burden, however, to show that *forty* subpoenas were necessary to obtain the "important evidence." Additionally, Defendants argue that there was no significant difference between Stultz's initial brief in support of his first motion for summary judgment (Dkt. No. 188) and his later brief for the same (Dkt. No. 454), and urge that Stultz failed to meet his burden to demonstrate that his extensive efforts to obtain documents contributed to success on his main claims. Dkt. No. 589, at 10. I tend to agree with Defendants that Stultz has failed to meet his burden, and I am thus hard-pressed to recommend fully compensating an attorney for the mountain of discovery that he created but has failed to prove was necessary. After all, the two main claims to survive summary judgment, and

22

which the Fourth Circuit permitted to advance, were the due process claim involving Stultz's

termination and the First Amendment retaliation claim—which are also the only claims for

which Stultz can recover fees under § 1988.

Similarly, Defendants assert that Stultz's counsel should not be compensated for taking

or defending 28 depositions because he fails to explain how each of these depositions was

necessary. Dkt. No. 589, at 10. Stultz characterizes many of the depositions as "marathons," and

notes that each deposition required dozens of hours of preparation time and resulted in 539

exhibits. Dkt. No. 586, at 12–13. Defendants' expert submits that ten depositions[25] were of

marginal, if any, relevance, and were unnecessary to Stultz's success on his due process claim.

Dkt. No. 589-4, at 14.

Costs of a deposition should be awarded "when the taking of a deposition is reasonably

necessary at the time of its taking." Bland v. Fairfax Cty., No. 1:10cv1030 (JCC/JFA), 2011 WL

5330782, at *7 (E.D. Va. Nov. 7, 2011) (quoting Jop v. City of Hampton, 163 F.R.D. 486, 488

(E.D. Va. Oct. 20, 1995) (citation omitted)). "In order for the deposition to be necessary, it needs

only to be 'relevant and material' for the preparation in the litigation." Id. (quoting Signature

Flight Support Corp. v. Landow Aviation L.P., 730 F. Supp. 2d 513, 531 (E.D. Va. 2010)

(citation omitted)). Additionally, even if not used at trial, a deposition taken within the proper

bounds of discovery is normally deemed to be necessarily obtained for use in the case. Id.

Stultz provides summaries of the information obtained from each deposition at issue. See

Dkt. No. 592-2. While he contends that each deposition was "important," the summaries show

that not every deposition was "necessarily obtained for use in the case." For example, Senator

Newman seems to have been deposed solely to confirm a variety of extraneous matters, such as

---

[25] The specific depositions include those of Michael Bolton, Lynwood Butner, Sean Connaughton, Thomas Dash, John Dawson, Senator R. Creigh Deeds, Georgia Esposito, Andrew Hicks, Elizabeth Jensen, and Senator Steve Newman. Dkt. No. 589-4, at 14.

confirming he had met with Stultz, and that he saw Commissioner Holcomb while the legislature

was in session. The Hicks deposition seemed to mostly discuss his own issues with DMV, which

were not relevant to Stultz's case. The Hicks and Bolton depositions seem cumulative in that

both testified about the functionality of the STARS system. Stultz took a number of depositions

from other DMV employees, all of whom described the environment inside the DMV but did not

seem to shed relevant light on Stultz's case (e.g., Dawson, Hicks, Jensen, Stovall).

Connaughton's deposition confirmed that his office did not request certain information, which

the Pike deposition had already demonstrated. Finally, it is telling that two depositions may have

been extraneous seeing as they each lasted under twenty minutes: Butner's lasted nineteen

minutes, and Dawson's was fifteen minutes.

      Overall, the deposition summaries show that many of the depositions that Defendants

object to were used to "confirm" information that Stultz already had, were cumulative, or seemed

unnecessary for use in the case. It is not unreasonable to expect counsel to carefully craft a

discovery plan such that it avoids unnecessary waste of time and resources. For example, a

discovery plan can and should include the efficient use of interrogatories, requests for admission,

and stipulations. The Federal Rules set limits on the number of depositions allowed without

leave of court for a reason: other discovery tools allow a party to obtain information necessary to

present a claim or defense. The efficient use of these tools requires the parties to engage in a

collaborative effort to resolve the litigation. That effort requires cooperation, an understanding of

proportionality, and, indeed, self-restraint by the attorneys in the case. Stultz fails to show that 28

depositions—18 more than the Federal Rules of Civil Procedure permit without leave of court—

were necessarily obtained for use in the case and they instead seem just to have added on

cumulative and duplicative information.

Phase 3: Motion for Partial Summary Judgment[26]

Defendants vehemently object to the hours Stultz spent on his summary judgment pleadings, correctly noting that, inclusive of exhibits, Stultz filed over 6,500 pages of documents for his motions for summary judgment, opposition brief, and reply brief. Dkt. No. 589, at 6–7.

Stultz filed two separate motions for summary judgment, one for his due process claim (Dkt. No. 431) and one for his First Amendment retaliation claim (Dkt. No. 434). The due process claim brief was 35 pages long (405 pages with exhibits), and the First Amendment claim brief was 39 pages long (565 pages with exhibits). The Court set a 50-page limit for briefs in support of, or in opposition to, summary judgment, and a 25-page limit for reply briefs. Dkt. No. 285. As evidenced by the Court's granting of Defendants' motion to strike Stultz's pleadings, it is clear that Stultz filed two separate motions to overcome the page limit requirement. See Dkt. No. 447.

Thereafter, Stultz's consolidated motion for summary judgment totaled exactly 50 pages without exhibits, and 1,109 pages with exhibits. Dkt. No. 454. Stultz does not dispute that, days later, he filed two additional declarations for the Court to consider, with the first totaling 132 pages (Dkt. No. 457), and the second totaling a staggering 1,697 pages (Dkt. No. 459). Stultz's subsequent opposition brief totaled 2,677 pages (Dkt. No. 466), and his reply brief totaled 1,036 pages (Dkt. No. 487). Inclusive of exhibits, Stultz's summary judgment pleadings totaled an *6,651 pages*, for only *two claims*. For comparison, Defendants' summary judgment pleadings, inclusive of exhibits, consisted of a 50-page motion for summary judgment (Dkt. No. 429); 94-page opposition brief (Dkt. No. 465); and 63-page reply brief (Dkt. No. 484).

The Court agrees with Defendants that Stultz's counsel should not be compensated for

---

[26] Stultz defines Phase 3 as June 30, 2016 through August 26, 2016, but the billing records more accurately reflect the period to have started as early as June 9, 2016.

such unnecessary work. For preparing Stultz's initial summary judgment motions, Mr. Webb, Ms. Dickens, and paralegal Seifried compiled at least 99.30 hours between June 9, 2016, and June 15, 2016. Dkt. No. 586-4, at 110–12. After the Court struck those motions, Ms. Dickens and Ms. Seifried spent an additional 27 hours revising the consolidated motion for summary judgment between June 24, 2016, and June 30, 2016. Id. at 114–17. Mr. Webb, Ms. Dickens, and paralegal Matthew Westmoreland spent at least 151.50 hours from June 28, 2016, to July 15, 2016 to draft the brief in opposition to Defendants' motion for summary judgment. Id. at 116–20. And finally, for the reply brief in support of Stultz's motion for summary judgment, Mr. Webb, Ms. Dickens, and Mr. Westmoreland spent 107.20 hours from July 19, 2016, to July 29, 2016. Id. at 121–23. In total, Stultz's counsel seeks compensation for at least 385 hours for briefing at the summary judgment phase, which amounts to $86,625.00 (if billed entirely at the associate's rate), or $134,750.00 (if billed entirely at the partner's rate). Apart from the exorbitant number of pages that Stultz filed in relation to his summary judgment pleadings, the amount of hours that these billers spent on the briefing is further evidence that the hours expended are not reasonable in light of the issues involved and the extent of counsel's experience as a trial lawyer. See Supinger v. Virginia, Civil Action No.: 6:15-cv-17, 2019 WL 1450530, at *6 (W.D. Va. Mar. 4, 2019).

Phase 4: Defense of Appeal to the Fourth Circuit[27]

The amount of hours that Stultz's attorneys spent on briefing and preparing for the Defendants' interlocutory appeal to the Fourth Circuit on the qualified immunity issue likewise is not reasonable given the scope of the appeal and issues involved. For example, Ms. Dickens spent at least 292.20 hours on researching and preparing Stultz's brief, and it is not entirely clear

---

[27] Stultz defines Phase 4 as August 29, 2016 through December 4, 2016. The billing records more accurately reflect the period to be August 26, 2016, to October 25, 2017 (the date of the oral argument).

if that time spent was reasonable because multiple time entries were block billed or vague (for

example, "reviewing documents," "revising" the appendix or brief, or "preparing" the appendix

or brief). See Dkt. No. 586-4, at 132–46. In addition, Mr. Webb billed 180.90 hours on the same

brief (and most of those entries were plagued by block billing). See id. at 136–46. In total, the

two attorneys amassed 473.10 hours on preparing the brief (which, coupled with the vague time

entries and block billing, seem duplicative when each attorney did not sufficiently describe their

specific tasks). In monetary terms, Ms. Dickens generated $65,745.00 and Mr. Webb generated

$63,315.00 in fees, for a total of $129,060.00. Significantly, that sum of hours does not include

the time each attorney spent corresponding with other attorneys or the courts about the issue, nor

the additional time spent by paralegals on the briefing. Furthermore, Mr. Webb spent at least

88.80 hours "preparing" for oral argument, which would equate to more than two full 40-hour

work weeks. See id. at 153–54.[28] Overall, the amount of work amassed in preparation for the

Fourth Circuit appeal is simply not reasonable given the limited nature of the interlocutory

appeal.

Other Excessiveness and Overlap

Outside of Defendants' specific objections, the billing records show a concerning amount

of excessive—and unjustified—billing entries, particularly for court proceedings. Stultz's

counsel appears to have billed far more time for hearings than the Court would expect based on

the minute entries for those hearings. For example, Mr. Webb billed 2.30 hours for a 26 minute

hearing on March 31, 2014 (Dkt. No. 586-4, at 12); Mr. Webb and Ms. Dickens each billed 2.00

hours for a hearing on December 17, 2015, which lasted one hour and three minutes (id. at 56);

---

[28] Mr. Webb spent 2.20 hours on October 6 ("categorizing emails"); 2.30 hours on October 10; 2.30 hours on
October 12; 6.90 hours on October 13 (described as various preparation, and block billed); 4.50 hours, listed twice,
on October 15; 5.20 hours on October 16; 3.70 hours on October 19; 9.50 hours on October 20; and 11.2, 12.8, 11.5,
and 12.2 hours between October 21 and 24, all for some type of preparation. Dkt. No. 586-4, at 153–54. Most entries
were vaguely described as some form of "preparation."

Mr. Webb and Ms. Dickens each billed 7.0 and 7.5 hours, respectively, for an August 10, 2016 motions hearing that lasted, at most, 5.5 hours (id. at 127); Mr. Webb billed 1.30 hours for a 37-minute motions hearing on July 7, 2014 (id. at 15); and Mr. Webb and Ms. Dickens each billed one hour for a 35-minute hearing on May 31, 2016 (id. at 107). The attorneys made no effort in any of these billing entries to explain why the time for the particular hearing would not approximate the court's minute entry. Furthermore, the hours billed exclude time for travel, preparation, and debriefing. Apart from the apparent duplication of efforts, these excessive billing entries are concerning because they lead me to question and speculate as to the accuracy of all time entries.

In terms of overlapping, Mr. Webb billed significant amounts of time for time spent on the companion cases. For example, Mr. Webb billed 7.0 hours for attending the Wootten trial (presumably as an observer). Id. at 137. Ms. Dickens billed 2.30 hours to revise Supinger's initial draft of an opposition brief to file in the Fourth Circuit, and Mr. Webb spent 3.50 hours reviewing Supinger's opposition brief. Id. at 138. Mr. Webb also spent 6.90 hours conferencing with Stultz to prepare a declaration supplementing Supinger's defense. Id. at 144. Stultz will likely argue that work done related solely to the Wootten and Supinger cases was necessary to prepare or otherwise determine how to proceed in his own case. However, Defendants cannot be expected to compensate Stultz for work his counsel did on a case that was not his own, no matter how related.

It seems necessary to point out that, in the affidavits supporting the work he performed, Mr. Webb touts his years of experience as a trial lawyer. A review of the docketing system in the Western District of Virginia demonstrates that Mr. Webb has litigated fewer than five civil rights cases in this District, but nevertheless, he has been a trial lawyer since 1986. Certainly, the

28

experience a lawyer develops over years of practice justifies a higher hourly rate, but in return, that experience should bring with it a greater efficiency in the lawyer's practice. In this case, the time billed for many of the tasks fails to reflect the efficiency expected of a lawyer with Mr. Webb's years of experience.

Parties' Litigation Strategies

Finally, Stultz's litigation strategy drove up his own fees. For example, Stultz opposed the entry of a protective order that was designed to protect information disclosed by Defendants, such as personal information, personnel files, medical records, and other confidential materials. See Dkt. No. 100. In fact, Virginia state law mandated that Defendants protect the relevant sensitive information by taking certain procedural steps, like entry of a protective order. Stultz also opposed attending a formal pretrial conference with the Court. See Dkt. No. 249. Defendants had asked that one pretrial conference be scheduled for all three DMV cases because it would be a more efficient way to handle discovery issues common to all of them. But again, Stultz opposed this cost- and time-saving request. In that same vein, Stultz opposed other measures intended to cut down on discovery costs; for example, he opposed Defendants' motion to consolidate discovery depositions in his and Supinger's parallel cases. Dkt. Nos. 278, 337. These examples demonstrate that Stultz, in some instances, adopted a litigation strategy which drove up his fees.[29]

---

[29] Stultz stated in both his original fee petition and reply brief that he made voluntary reductions in the fee amount he seeks. He alleges that, before his initial petition, he eliminated 346.1 hours for administrative and state court proceedings, and 871.2 hours for legal work he deemed to be potentially duplicative, excessive, or unnecessary, or for work on unsuccessful claims unrelated to successful claims. Dkt. No. 586-1, at 7. Stultz asserts that there is no basis for any further reduction given Stultz's "substantial efforts" to pare down his fee request. Dkt. No. 586, at 19. Stultz made additional reductions to his petition upon filing his reply brief, specifically for travel time for non-party depositions, time spent on experts (apart from Blaine Corle and Larry Lynch, whom Defendants do not contest), some time spent on state administrative proceedings, and some paralegal time. Dkt. No. 592-1, at 10–13. While the Court appreciates Stultz's attempt to exercise billing judgment and takes that into consideration, the remaining illustrations of duplicative efforts, excessive time entries, and block billing demonstrate that the fee request presented remains unreasonable.

Defendants seek a 25% reduction for Stultz's "excessive discovery." Dkt. No. 589-4, at 14. Normally, I would likely adopt a similar reduction so as to not award such litigious conduct on Stultz's part, but much of Stultz's effort that Defendants see as excessive was brought on by the way in which Defendants elected to defend this case. For example, Stultz filed an alarming number of motions to compel because of counsel's joint inability to come to discovery resolutions on their own.[30] Additionally, Defendants' conduct relating to the "August 2015 database fiasco," in which Defendants took Stultz's silence as "tacit approval" regarding their desire to modify the database search terms (Dkt. No. 589, at 2 n.1), is also demonstrative. While the Court does not make an assessment of Stultz's characterization of the issue as counsel's intentional manipulation to avoid certain discovery (Dkt. No. 586, at 14), the fact that Defendants proceeded to alter the search terms without further seeking an affirmative response from Stultz demonstrates their "hardball" litigation strategy.

Together, the parties litigated at least a dozen motions to compel (some of which were as simple as requesting that the opposing party provide deposition dates). The parties filed at least eight motions for extensions of time (many of which the parties could have agreed to without consent from the court). Stultz filed at least three motions to exceed the Federal Rules' discovery limits, while Defendants filed for numerous protective orders and even sanctions for Stultz's counsel at least twice. The docket alone makes clear that each side employed litigation strategies that were not collaborative, but instead detrimental to the timely and effective resolution of this case.

Considering all of the above, I recommend an overall 20% reduction for Stultz's excessive behavior and billing practices.

---

[30] In Defendants' defense, Judge Conrad reminded Stultz's counsel of the obligation to confer in good faith with Defendants prior to seeking court action. See, e.g., Dkt. No. 306, at 2.

### iii.  Novelty of Questions Raised and Skill Required

Defendants argue that Stultz cannot justify his fee request based on the novelty of the questions raised in this suit. Dkt. No. 589, at 12–13. Stultz characterizes the "key issue" in this case as whether Defendants deprived Stultz of due process by denying his requests for a hearing under LEOPGA, and asserts that this was a new area of law on which he was victorious. Dkt. No. 586, at 9. Defendants counter that the fact that the Fourth Circuit affirmed that the law surrounding Stultz's due process claim was clearly established such that Defendants were denied qualified immunity demonstrates that the issue was not as novel and did not require such specialized skill to litigate as Stultz represents. Dkt. No. 589, at 13.

Defendants did argue that the area of law was not clear in support of their qualified immunity defense; however, the Fourth Circuit summarily affirmed the District Court on the issue. See Dkt. No. 541. Indeed, the Fourth Circuit characterized Defendants' argument on the issue as an "attempt to create ambiguity," and recognized that even though there may have been little case law on the issue, the relevant statutes themselves were unambiguous. Id. at 10. Furthermore, the fact that a legal issue may be complicated, and that a court requests additional briefing and issues a long memorandum opinion (as was the case here regarding Stultz's First Amendment claim), does not indicate that the case required any particularly novel questions or required specialized skill. That is the reality of litigation: some cases require many motions and filings, while others do not. Overall, considering the case as a whole, I find that while this case was not novel and did not require unique skill, a further reduction in fees is not warranted.

### iv.  Fee Awards in Companion Cases

Finally, Defendants argue that the Court should further reduce the fee award here because the fees Stultz seeks are "exorbitantly higher" than attorneys' fee awards in similar cases,

including in the two companion cases to this matter, Wootten v. Commonwealth, 6:14-cv-13,

and Supinger v. Commonwealth, 6:15-cv-17. Dkt. No. 589, at 14–15. The parties agree that

Stultz's case was the most complex and drawn out of the three DMV cases. See Dkt. Nos. 589, at

7; 592, at 15. Nevertheless, the Court cannot ignore the similarities between the three cases and

must take them into consideration.

Stultz argues that his fee request is justifiably higher than that in Wootten's case because

his case involved more claims and was more complex, and he obtained a much larger monetary

recovery. Dkt. No. 592, at 15–16. Wootten alleged eight claims against various DMV defendants

arising out of the same series of events as Stultz.[31] Wootten, Dkt. No. 109. Following a jury

verdict in her favor, the District Court determined that she was entitled to judgment of

$384,068.15 with post-judgment interest. Wootten, Dkt. No. 240. For other relief, Defendants

were ordered to: pay Wootten's costs for any law enforcement certifications that she maintained

but lapsed; remove from Wootten's personnel file the two April 2013 written notices (the

disciplinary and termination notices); and place in her personnel file the jury verdict and Final

Judgment. Wootten, Dkt. No. 236. Wootten's attorneys sought almost $400,000.00 in fees and

expenses for the work performed on her case over the course of several years.[32] Wootten, Dkt.

No. 267, at 1.

Supinger asserted fourteen claims—even more similar to those Stultz asserted—against

various DMV defendants, again arising out of the same series of events as in Wootten and

---

[31] Her claims were very similar to those of Stultz and included gender and national origin discrimination under Title VII, Title VII retaliation, First Amendment violations, due process violations, supervisory liability, racial discrimination, and a violation of the Driver's Privacy Protection Act. Wootten, Dkt. Nos. 1, 109.

[32] The final attorneys' fees amount was never disclosed, however, because the parties entered a joint notice of voluntary dismissal while the case was on appeal. Shortly thereafter, Wootten entered a notice that the judgment had been satisfied. Wootten, Dkt. Nos. 274, 278.

Stultz.[33] Supinger received $174,501.00 following settlement of his case (Supinger, Dkt. No. 221, at 21), and initially petitioned for $844,622.50 in attorneys' fees. Supinger, Dkt. No. 223, at 25. The District Court awarded to Supinger $427,842.27 in attorneys' fees, and, with costs of $2,704.90, the total award was $430,547.17. Supinger, Dkt. No. 246, at 16.[34]

Following a comparison to Wooten, the District Court imposed a 10% reduction in the lodestar figure in the Supinger case "to account for the vast differences in both ultimate results and fee requests despite the presentation of similar claims." Supinger, Dkt. No. 246, at 15. The present value of Stultz's settlement includes $77,115.93 in back pay, $102,000.00 in non-economic damages, $326,250.00 in lost income and fringe benefits, and a $154,922.78 annuity payout for a total of $660,288.71.[35] Dkt. Nos. 586, at 4; 589, at 14.

I find persuasive Defendants' argument that Stultz cannot justify a fee request almost five times that requested by Wooten. Both Wooten and Supinger prevailed on their due process claims, but no others. Stultz cannot deny that his main victory was on his interrelated due process and First Amendment claims.[36] Furthermore, all three cases arose out of the same series of events and followed similar procedural paths (motions to dismiss, motions for summary judgment, interlocutory appeal to the Fourth Circuit for Supinger and Stultz, followed by settlements for Supinger and Stultz).

---

[33] Supinger's claims included gender and national origin discrimination under Title VII, Title VII retaliation, First Amendment retaliation, due process violations, supervisory liability, racial discrimination, violation of the Government Collection and Dissemination Practices Act, violation of the Driver's Privacy Protection Act, violation of the Virginia Whistleblower Protection Act, various state law claims, and tortious interference. Supinger, Dkt. No. 23.

[34] The Supinger parties cross-appealed the attorneys' fee award to the Fourth Circuit, but recently, the Fourth Circuit dismissed the appeal following the parties' submission of a stipulated motion to voluntarily dismiss. Supinger, Dkt. No. 254. Thus, it is unclear what final attorneys' fee award Supinger received.

[35] The future value of Stultz's annuity is $210,485.83, bringing the future value of his settlement to $715,851.76. The Court will consider the present figure because that is what Defendants are bound to actually pay.

[36] As discussed infra, it is difficult to consider the success on both claims as two independent victories, as the First Amendment claim rose and fell with the due process claim.

Stultz attempts to distinguish his case by noting that the three cases involved different claims and special damages. As specifically compared to Wootten, Stultz's settlement resulted in a "complete elimination" of all false allegations of professional misconduct from his personnel file. Dkt. No. 592, at 15–16. Wootten actually had the notices removed from her file as well, but regardless, Stultz cannot deny that the claims involved in all three cases were strikingly similar. Essentially all of Stultz's claims were also included in Wootten's and Supinger's lawsuits, including: due process, Title VII retaliation, First Amendment claims and/or retaliation, supervisory liability, DPPA violation, and various state law claims. As will be discussed, Stultz's success on his First Amendment claim was not nearly as successful as he claims. Stultz points out several other minor differences between his case and Wootten's, but fails to accept the similarities among all of the cases.

The fact of the matter is that each of these three cases arose out of the same series of events, involved substantially the same claims, and resulted in very similar victories. It would be error for me to fail to consider their similarities. Accordingly, I find an additional 10% reduction to be appropriate.[37] Cf. Doe v. Alger, Civil Action No. 5:15-cv-00035, 2018 WL 4655749, at *4, *10 (W.D. Va. Sept. 27, 2018) (reducing unreasonable attorneys' fees award because of $280,000 fee award in case in parallel jurisdiction; after prevailing party submitted fee request of $965,000, which was almost four times the amount awarded in the similar case, the court awarded only approximately $520,000 in fees; both cases involved extremely similar fact patterns, followed strikingly similar procedural paths, involved many similar motions, and were decided on summary judgment).

---

[37] For perspective, Stultz seeks roughly $1.8 million in attorneys' fees for a settlement worth roughly $660,000; Wootten sought $400,000 in fees for a $384,000 jury verdict plus some injunctive relief; and Judge Moon found that Supinger was entitled to a fee award of roughly $430,000 after securing a settlement worth $175,000.

34

### v.    Fees for Original Counsel

Both Dale Webb and Melvin E. Williams represented Stultz initially in this matter. Mr. Williams withdrew due to a conflict of interest in January 2016. Dkt. No. 313. Mr. Webb has continued to represent Stultz for the duration of the case. Defendants argue that the Court should reduce Mr. Williams's fee request because the time entries "plainly indicate that the tasks deal with lost issues that do not share the same common core of facts as the due process claim." Dkt. No. 589, at 11. In addition, Defendants assert that the time entries are vague, and thus the Court cannot determine if the amount sought is reasonable. Id. at 12. Mr. Williams worked on Stultz's case through the filing of the Amended Complaint and much of the contentious discovery, so I do not find that Mr. Williams dealt solely with lost issues. However, his billing records are plagued with similar issues of unnecessary duplication,[38] vagueness,[39] and excessiveness (perhaps because of the vague entries).[40] Accordingly, Mr. Williams's firm's hours will be reduced by 15%, similarly to the reduction in FMWM's hours for excessiveness, vagueness, and duplication.

### vi.    Lodestar Calculation

In reducing the amount of hours spent on the litigation, the Court can either identify and disallow the specific hours that counsel fails to adequately document, or reduce the overall fee award by a fixed percentage or amount based on the court's familiarity with the case, its complexity, and the counsel involved. Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). Making an overall reduction by a fixed percentage is the more sound approach here based

---

[38] Both Mr. Williams and Mr. Webb attended depositions and hearings, and billed for time spent conferencing with their client. See, e.g., Dkt. No. 586-3, at 11, and Dkt. No. 586-4, at 11; 586-3, at 12, and 586-4, at 12; 586-3, at 14, and 586-4, at 15; 586-3, at 28, and 586-4, at 35; 586-3, at 29, and 586-4, at 37.

[39] See, e.g., Dkt. No. 586-3, at 7 (6.10 hours for "Draft Complaint").

[40] See Dkt. No. 586-3, at 19 (billing 32.50 hours over a six-day span for conferencing with client and/or Mr. Webb about Amended Complaint).

on the length and complexity of the case, the voluminous record, and the deficiencies that plague

the billing entries throughout. Accordingly, the lodestar calculation now amounts to

$936,799.75.

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Dale W. Webb | 2279.0[41] − 1025.55 (45%) = 1253.45 | $350.00 | $438,707.50 |
| Hours for Phase 1 | 29.7 − 22.275 (45%) = 7.43 | | $2,600.50 |
| Hours for TI | 32.7 − 14.715 (45%) = 17.99 | | $6,296.50 |
| | | | $447,604.50 |
| Travel | - | ($6,720.00) | **$440,884.50** |
| | | | |
| Audra M. Dickens | 1940.7 − 873.315 (45%) = 1067.39 | $225.00 | $240,162.75 |
| Hours for TI | 14.8 − 6.66 (45%) = 8.14 | | $1,831.50 |
| Kevin M. Gick | 258.3 − 116.235 (45%) = 142.07 | $225.00 | $31,965.75 |
| Hours for TI | 32.4 − 14.58 (45%) = 17.82 | | $4,009.50 |
| Paralegal Services | 1181.3 − 590.65 (50%) = 590.65 | $125.00 | $73,831.25 |
| Hours for TI | 4.4 − 2.2 (50%) = 2.2 | | $275.00 |
| | | | |
| Melvin E. Williams | 369.1 − 55.365 (15%) = 313.74 | $350.00 | $109,809.00 |
| Micah D. Wright | 99.5 − 14.925 (15%) = 84.58 | $225.00 | $19,030.50 |
| | | | |
| | | **TOTAL** | **$921,799.75** |
| Fee Petition | - | - | $15,000.00 |
| | | **TOTAL with FP** | **$936,799.75** |

## B. Hours Spent on Unsuccessful Claims

After calculating the lodestar fee, the court must subtract fees from the fee award for

hours spent on unsuccessful claims that are unrelated to the successful claims. McAfee v.

Boczar, 738 F.3d 81, 88 (4th Cir. 2013). The question is whether the unsuccessful claims

involved a "common core of facts or . . . related legal theories." Hensley v. Eckerhart, 461 U.S.

424, 435 (1983). The Fourth Circuit has repeatedly interpreted related claims to be those that are

"inextricably intertwined" with the successful claim. See Abshire v. Walls, 830 F.2d 1277, 1282

(4th Cir. 1987) (explaining claims based on different legal theories arose from a "common core

of facts" because they were "inextricably intertwined" in § 1983 case); see also Goodwin v.

---

[41] 29.7 hours have been subtracted from Mr. Webb's total hours to account for Phase 1. Mr. Webb initially billed for 33.5 hours of work done in Phase 1, but made a voluntary reduction of 3.8 hours in his reply brief. Dkt. No. 592-13, at 2. Thus, Mr. Webb still seeks compensation for 29.7 hours of work performed in Phase 1.

Metts, 973 F.2d 378, 382–83 (4th Cir. 1992) (adopting Abshire analysis in § 1988 fee petition

case and holding that unsuccessful claims did not arise from a "common core of facts" because

they were not "inextricably intertwined"); Reed v. Dep't of Corrections, Va., Civil Action No.

7:13–CV–00543, 2015 WL 2374193, at *3–*4 (W.D. Va. May 18, 2015) (applying "inextricably

intertwined" analysis).

Defendants contend that a significant percentage of Stultz's fee request includes time

spent on claims that were ultimately unsuccessful. Specifically, Defendants argue that the Court

dismissed: two subparts of Stultz's due process claim; part of Stultz's Title VII retaliation claim;

the Driver's Privacy and Protection Act claim; the claim of computer invasion of privacy; and

Aubrey Lane from the entire lawsuit. Dkt. No. 589, at 16. The Court later granted summary

judgment to Defendants on the entire Title VII claim and one other subpart of the due process

claim, and dismissed Thomas Penny from the due process claim. Id. Defendants argue that

Stultz's fee request should be reduced by 20% to account for the failure of these claims. In his

initial petition, Stultz alleged that he eliminated the hours related to the Title VII retaliation,

DPPA, and computer invasion of privacy claims. Dkt. No. 586, at 20. Thus, his lodestar figure

includes only hours spent on his due process, First Amendment retaliation, supervisory liability,

and tortious interference claims.[42] Id. In order to account for the pieces of the claims that the

District Court dismissed or for which it granted summary judgment to Defendants, I recommend

applying an additional overall 5% reduction.

i.      **Hours for Tortious Interference Claim (TI)**

Stultz seeks compensation for his tortious interference claim, in which he alleged that

---

[42] However, in his reply brief, Stultz opposes Defendants' reduction for dismissed claims and states that the hours
spent on the DPPA and invasion of privacy claims are compensable because they share a common core of facts with
the First Amendment retaliation claim. Dkt. No. 592-1, at 15. The position that the DPPA and invasion of privacy
claims were intertwined raises the question of whether the time spent on these unsuccessful claims was wholly
eliminated from the fee petition.

Holcomb, Hill, Thorpe, and Penny interfered with his contract expectancy with prospective employers by disseminating to those employers information about Stultz that Defendants knew was false and defamatory. Defendants argue that, because a successful party is not ordinarily entitled to recover attorneys' fees unless such recovery is contemplated by contract or statute under Virginia law, Stultz cannot recover for time spent on his surviving tortious interference claim. Dkt. No. 589, at 17. Stultz counters that the tortious interference claim is inextricably intertwined with his successful constitutional claims and, thus, must be compensated. Dkt. No. 592, at 18–19.

I do not find that the tortious interference claim is inextricably intertwined with his constitutional claims. Stultz's due process victory arises out of Defendants' failure to provide him the process he was due to grieve his termination. His First Amendment claim centered on his petitions to elected representatives, public officials, and other government representatives to remedy an ineffective and unsafe work environment, after which Defendants allegedly retaliated against him for doing so. The tortious interference claim relates to conduct that occurred after Stultz's employment with the DMV ended—in fact, when he was looking for other jobs. While the tortious interference conduct likely would not have occurred had Stultz not been terminated, Defendants' conduct was wholly apart from the events surrounding the lack of procedure to grieve his termination and his First Amendment conduct.

Accordingly, while Stultz succeeded on this claim, it is not compensable under § 1988 because it is not so inextricably intertwined with his § 1983 claims. Tortious interference with contract expectancy arises out of Virginia common law. See Chaves v. Johnson, 335 S.E.2d 97, 120 (Va. 1985) (recognizing and adopting cause of action for tortious interference). A prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee, as "the American Rule

38

creates the presumption that parties bear their own legal costs, win or lose." <u>Nelson v. Green</u>, No. 3:06–cv–00070, 2014 WL 131055, at *24 (W.D. Va. Jan. 14, 2014) (Moon, J.) (quoting <u>In re Crescent City Estates, LLC</u>, 588 F.3d 822, 825 (4th Cir. 2009)). Virginia follows the American Rule. <u>REVI, LLC v. Chi. Title Ins.</u>, 776 S.E.2d 808, 813 (Va. 2015) (quoting <u>Mullins v. Richlands Nat'l Bank</u>, 403 S.E.2d 334, 335 (Va. 1991) ("Generally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant.")). No Virginia statute contemplates recovery of attorneys' fees for a successful tortious interference claim. Although Stultz's tortious interference claim survived summary judgment, it is nevertheless not compensable under § 1988. <u>Cf.</u> <u>Nelson</u>, 2014 WL 131055, at *24 (dismissing under Rule 12(b)(6) claim for attorneys' fees pursuant to § 1983 claim when plaintiff failed to plead facts to overcome the American Rule) (quoting <u>Kelly v. Golden</u>, 352 F.3d 344, 352–53 (8th Cir. 2003) (holding "[t]he power of a federal court to award fees is limited by <u>Erie R. Co. v. Tompkins</u> . . . in those cases in which state law requires an award of fees or prohibits such an award as a matter of state policy" in breach of contract and tort case)).

### ii.    Revised Calculation

After subtracting time for Stultz's non-compensable tortious interference claim, followed by a 5% reduction, the total fee award comes to $878,917.89.

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Dale W. Webb | 2279.0 − 1025.55 (45%) = 1253.45 | $350.00 | $438,707.50 |
| Hours for Phase 1 | 29.7 − 22.275 (75%) = 7.43 | | $2,600.50 |
| Travel | - | ($6,720.00) | $434,588.00 |
| | | | |
| Audra M. Dickens | 1940.7 − 873.315 (45%) = 1067.39 | $225.00 | $240,162.75 |
| Kevin M. Gick | 258.3 − 116.235 (45%) = 142.07 | $225.00 | $31,965.75 |
| Paralegal Services | 1181.3 − 590.65 (50%) = 590.65 | $125.00 | $73,831.25 |
| | | | |
| Melvin E. Williams | 369.1 − 55.365 (15%) = 313.74 | $350.00 | $109,809.00 |
| Micah D. Wright | 99.5 − 14.925 (15%) = 84.58 | $225.00 | $19,030.50 |
| | | | |
| | | **TOTAL** | **$909,387.25** |
| | | (5% = $45,469.36) | **$863,917.89** |
| Fee Petition | - | - | $15,000.00 |
| | | **TOTAL with FP** | **$878,917.89** |

## C. Degree of Success of Stultz's Claims

The final step in determining a reasonable fee award is calculating a percentage of the lodestar figure that takes into account the degree of success of a prevailing party's claims. "[T]he court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the [prevailing party]." McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013) (citation and quotations omitted). While steps two and three may seem similar, a court must "properly deduct[] the billing entries associated with the unsuccessful [claims] and then consider[] the *overall* degree of success in light of the litigation as a whole." Randolph v. PowerComm Constr., Inc., No. 18-1728, 2019 WL 3072555, at *5 (4th Cir. July 11, 2019 ) (citing Hensley v. Eckerhart, 461 U.S. 424, 440 (1983) ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.")).

However, "success is not binary—a party is not simply successful or unsuccessful but may achieve 'partial or limited success.'" Id. at *5 (quoting Hensley, 461 U.S. at 436). When a prevailing party achieves only partial or limited success, the lodestar figure may be excessive

notwithstanding the fact that all claims were "interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436. When a plaintiff's results have been "excellent," the award should account for "all hours reasonably expended on the litigation," even if some claims prove unsuccessful; alternatively, when a plaintiff "has achieved only partial or limited success," the court should reduce the award to prevent the plaintiff from obtaining "an excessive amount" in comparison to his measure of success. Id.

Defendants concede that Stultz had a "unique victory" in defending his First Amendment retaliation claim against summary judgment, but his degree of success is limited because the damages for his due process and First Amendment retaliation claims overlap. Dkt. No. 589, at 16–17. Defendants characterize Stultz's First Amendment retaliation claim as "expensive insurance" in the event that he lost his due process claim. Id. at 17. Defendants propose a 10% reduction to account for Stultz's limited success. Id. Stultz argues that the Court should not reduce the lodestar amount any further because Stultz's degree of success was "excellent" and his settlement "massive." Dkt. No. 586, at 4, 21–23. Stultz alleges that this lawsuit was a "complete vindication" for him, and thus his counsel is entitled to a full fee recovery. Id. at 4.

The problem Defendants face is that Stultz's due process claim served as the core of his case. Stultz himself characterizes the due process claim as the "key issue" in this action. Id. at 9. The deprivation of due process to Stultz arose out of Defendants' failure to provide a post-termination hearing, as required by LEOPGA. Stultz would not have a procedural due process claim without first being terminated. Had Stultz been afforded a post-termination hearing, he would have been able to air his various grievances relating to his termination in that forum as opposed to filing this federal lawsuit. Moreover, the doctrine established in Carey v. Piphus, 435 U.S. 247 (1978), makes relevant the facts and circumstances of Stultz's employment and

termination; it suggests that Stultz's damages for Defendants' violation of his procedural due process rights may have been limited if he was properly terminated.

Alternatively, the problem Stultz faces is that the First Amendment claim rose and fell with his due process claim. This is not a matter of debate between the parties: the Fourth Circuit mandated as such. After affirming the District Court's denial of qualified immunity on the due process claims, the Fourth Circuit instructed the District Court upon remand to "hold the First Amendment questions in abeyance pending further proceedings on the procedural due process claims." Dkt. No. 541, at 16. The Appeals Court determined that further proceedings on the due process claim were necessary to shed light on the elements of Stultz's First Amendment claim, and it declined to address the qualified immunity question. Id. at 14. Furthermore, Stultz characterizes the First Amendment claim similarly to his procedural due process claim, labeling it as the "heart of [his] theory of liability against Defendants." Dkt. No. 592-1, at 8.

While litigants "in good faith may raise alternative legal grounds for a desired outcome . . . the result is what matters." Hensley, 461 U.S. at 435. "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tries the case with devotion and skill. Again, the most critical factor is the degree of success obtained." Id. at 436. Stultz cannot seriously argue that this action was a "complete vindication" for him. Stultz did not prevail on all of his claims, and many were dismissed at the motion to dismiss or summary judgment stages. Furthermore, while the due process and First Amendment claims were different claims, the First Amendment claim was almost entirely dependent on the due process claim. The two may have initially served as alternative legal grounds, but "the result is what matters." Id. at 435.

Accordingly, in analyzing Stultz's degree of success, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation." Id. Additionally, the court "must compare the amount of damages sought to the amount awarded." Mercer v. Duke Univ., 401 F.3d 199, 204 (4th Cir. 2005). Stultz did not make a specific monetary demand in his Amended Complaint, but instead broadly sought injunctive relief, including prospective injunctive relief, reinstatement, and/or correcting the allegedly false and defamatory statements made against him; compensatory, liquidated, and/or punitive damages; back pay; front pay; prejudgment interest; costs and attorneys' fees; and all other relief available. Dkt. No. 152, at 78.

Stultz alleges that the parties' economic experts valued his case somewhere between $487,473.00 and $743,084.00. Dkt. No. 592, at 15. The settlement agreement obligates Defendants to pay $77,115.93 in back pay, $102,000.00 in non-economic damages, $326,250.00 in lost income and fringe benefits, and a $154,922.78 annuity payout for a total monetary settlement of $660,288.71. Regarding non-economic recovery, Defendants removed the disciplinary notices from Stultz's personnel file, but Stultz was not reinstated. Stultz did not obtain all of the injunctive relief he originally requested, and did not obtain maximum value for the case (although he was close).

Stultz further argues that his victory may deter future misconduct by Defendants and other state agencies, and cites authority for the proposition that the damages a plaintiff recovers in a civil rights case contribute significantly to the deterrence of future civil rights violations. Dkt. No. 586, at 18. The amount of damages that a plaintiff recovers is relevant to the amount of fees to be awarded under § 1988, but it is "only one of many factors a court should consider in calculating an award of attorneys' fees." City of Riverside v. Rivera, 477 U.S. 561, 574 (1986).

43

Ultimately, "a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 440.

In his reply brief, Stultz states that he spent approximately 6,400 hours over five years on the merits phase of this case and defends that time by pointing out that other courts have found 6,000 spent over just a nine-month period to be reasonable. Dkt. No. 592, at 2. Although he discusses this comparison in terms of the reasonableness of the hours he spent on this litigation, the comparison is telling for how Stultz views his case and, ultimately, his entitlement to a full fee award. The case to which Stultz compares his own was for litigation to *desegregate public schools*. See Vaughns v. Bd. of Educ., 598 F. Supp. 1262, 1277–78 (D. Md. 1984). Similarly, the types of cases in which the Fourth Circuit has found that district courts abused their discretion in reducing awards for a limited degree of success are those in which a plaintiff, for example, "changed the legal landscape" in a particular area and "opened the courthouse doors" to claims that courts had previously not permitted. See Doe v. Kidd, 656 Fed. Appx. 643, 657–58 (4th Cir. 2016) (finding 63% reduction to be an abuse of discretion in case where plaintiff changed the legal landscape under the Medicaid Act by opening the door for plaintiffs to enforce rights under the Act using § 1983). In a § 1988 setting, "[w]here recovery of private damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." McAfee v. Boczar, 738 F.3d 81, 93 (4th Cir. 2013) (quoting Rivera, 477 U.S. at 585 (Powell, J., concurring)).

Here, it is true that Stultz prevailed on his procedural due process and First Amendment claims, but his victory did not change the legal landscape of the law, nor did it open the doors of the courts to previously unavailable avenues. For all of his claims, including those involving civil

44

rights, Supinger sought private damages and relief, specifically, injunctive relief and reinstatement; damages; and back pay and front pay. The DMV's failure to provide Stultz with a post-termination hearing applied specifically to Stultz's termination. While he did obtain a victory for civil rights, his success was limited to him. The ultimate settlement agreement awarded Stultz damages, backpay, and employee benefits—all relief personal to him—thus indicating that his victory was viewed as much less of a widespread deterrent to future civil rights violations.

Other cases in which courts have reduced fee amounts for limited success are more illuminating. The Fourth Circuit held that a district court did not abuse its discretion in reducing a fee award by 45% when the plaintiff achieved limited success in a § 1983 case. Prison Legal News v. Stolle, 681 Fed. Appx. 182, 185–86 (4th Cir. 2017). The district court weighed the fact that both sides achieved significant success: while defendants avoided paying any monetary award, plaintiff was the prevailing party because he succeeded on his due process claims, had the potential to recover punitive damages, and obtained permanent injunctive relief. Prison Legal News v. Stolle, 129 F. Supp. 3d 390, 405–06 (E.D. Va. 2015). The Fourth Circuit recognized that the district court weighed the plaintiff's tangible and substantial victories while also weighing defendant's success in avoiding any monetary damages. Prison Legal News, 681 Fed. Appx. at 186. In another case, a district court imposed a 10% reduction to account for a plaintiff's failure to "obtain the full relief he sought." See Doe v. Alger, Civil Action No. 5:15-cv-00035, 2018 WL 4655749, at *12 (W.D. Va. Sept. 27, 2018). That court imposed a "modest" reduction to account for the fact that plaintiff was largely successful, in that he established the defendants' liability and obtained much of the equitable relief he sought. Id.

In Stultz's case, the terms of his settlement agreement are just some of many factors to consider. It is unmistakable, however, that Stultz did not succeed on every claim, and did not receive all of the relief that he demanded in his Amended Complaint. The District Court dismissed almost half of his initial claims, and additional claims were disposed of on summary judgment. Stultz was victorious on his due process and First Amendment claims, and prevailed on the qualified immunity issue at the Fourth Circuit (although the Fourth Circuit noted the limited power of the First Amendment claim standing on its own). Stultz obtained a significant monetary recovery, and he had the disciplinary notices removed from his personnel file. Defendants ultimately had to pay a monetary award (unlike the defendants in Prison Legal News), and Stultz achieved significant success. Nevertheless, Congress intended § 1988 fee awards to be adequate to attract competent counsel, but also wanted to avoid producing windfalls to attorneys. McAfee, 738 F.3d at 92 (citing Rivera, 477 U.S. at 580). The complexion of Stultz's case was much broader in scope than his ultimate success, and he did not obtain his full relief. In light of previous reductions taken, I recommend an additional 10% overall reduction to the entire award. This further reduction brings the total recommended attorneys fee award to $777,526.10, and with the amount for the attorneys' fees petition, $792,526.10.[43]

---

[43] Defendants last argue that the Court should not compensate Stultz for time spent breaking the confidentiality provision of the settlement agreement following mediation. Dkt. No. 589, at 19. Stultz alleges that Defendants drove up the costs of litigation during the settlement phase because, after a month of discussing the Memorandum of Understanding reached in the mediation, Defendants did an "about-face" and claimed that the agreement was untenable. Dkt. No. 586, at 15. Stultz alleges that he wasted a lot of time because Defendants repeatedly promised settlement terms at the mediation that they could not carry out. Id. Defendants argue that Stultz's post-mediation fees should be reduced because he disclosed these prior negotiations that are not relevant to his attorneys' fees petition. Dkt. No. 589, at 19.

This dispute is yet another example of the parties' inability to communicate productively. Nevertheless, the Court notes that Stultz complains about Defendants' conduct when, in fact, he achieved the same settlement result, just through a different mechanism. I do not find that a further reduction in fees is warranted, but observe this dispute to be another example of both parties' overly-litigious conduct.

### III.     Costs and Expenses

Under § 1988, a prevailing plaintiff in a civil rights action is entitled to recover "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." Spell v. McDaniel, 852 F.2d 762, 771 (4th Cir. 1988) (quoting Northcross v. Bd. of Educ. of Memphis City Schs., 611 F.2d 624, 639 (6th Cir. 1979)); see also Daly v. Hill, 790 F.2d 1071, 1083–84 (4th Cir. 1986) (noting that the district court should review prevailing civil rights plaintiffs' expense requests under § 1988, which contemplates reimbursement for all reasonable litigation expenses). Stultz seeks $231,052.19 in costs and expenses.[44] Dkt. Nos. 592, at 20–21; 592-1, at 16.

| Taxable Costs | Amount |
|---|---|
| Filing Fees | $905.00 |
| Hearing Transcript Copies | $2,271.40 |
| Video Depositions | $22,598.50 |
| Deposition Transcripts | $32,613.20[45] |
| Photocopies | $54,040.60 |
| Process Services Fees | $2,122.13 |
| Expert Witness Expenses | $43,250.00[46] |
| E-Discovery Storage Expenses | $64,956.45[47] |
| Travel Expenses (mileage, meals, and parking) | $6,919.91 |
| Witness Fee Expense for "Expert" Bob Thomas | $1,250.00 |
| Rental Expense | $125.00 |
|  | **TOTAL: $231,052.19** |

Stultz is entitled to recover those reasonable costs and expenses associated with this case that he can establish with a reasonable degree of specificity. Design and Prod. Inc. v. Am.

---

[44] Stultz initially sought $277,866.59 in costs. Dkt. No. 586, at 23–24. Stultz voluntarily reduced his request by $48,622.50 to account for removal of expenses for all but two experts (Larry Lynch and Blaine Corle). Dkt. Nos. 592, at 21; 592-1, at 11–12. (In his reply brief, Stultz mistakenly asserts that he reduced his expenses by $54,721.89. See Dkt. No. 592, at 21.) As a result of his deduction, Stultz states that he seeks $229,244.09. Id. As demonstrated in the table, Stultz's is actually seeking $231,052.19.

[45] Stultz seeks $33,101.20 for deposition transcripts. Dkt. No. 586-6, at 5. However, he asserted that he excluded from his original petition any time spent on expert S. Ronald Hauri (see Dkt. No. 592, at 8), but included a $488.00 expense for Hauri's transcript. Id. This calculation reflects the total cost without Hauri's expense.

[46] Stultz initially sought $91,872.50 for experts (Dkt. No. 586-6, at 9), but, as discussed, this figure represents the amount sought for only experts Lynch and Corle.

[47] Stultz mistakenly calculates these expenses to total $62,660.35. Dkt. No. 586-6, at 12.

Exhibitions, Inc., No. 1:10-cv-899, 2011 WL 6002598, at *3 (E.D. Va. Nov. 30, 2011). The law

is clear that no litigation costs should be awarded in the absence of adequate documentation.

Trimper v. City of Norfolk, Va., 58 F.3d 68, 77 (4th Cir. 1995) (affirming a district court's

holding that "an unverified 'Chart of Expenses,' with no receipts or bills attached," was

insufficient documentation to award costs). Defendants do not object to any of Stultz's expenses

(outside of the expert fees, which Stultz already voluntarily reduced). That does not, however,

relieve the Court of its obligation to ensure that the expenses sought are reasonable. See Spell,

852 F.2d at 771 (conducting review of prevailing plaintiff's expenses to determine if they were

reasonable, even though defendants did not object to any expense).

Because the following expenses are reasonable and have adequate documentation, I

recommend a full award for Defendants' filing fees[48] and the Lynchburg Public Library room

rental for the Jensen and Dawson deposition. Dkt. No. 586-6, at 14–15, 185. I recommend

awarding all costs for hearing transcripts less $297.00, as the charge for the February 1, 2014

transcript does not have any supporting documentation. That amounts to an award of $1,974.40

for hearing transcripts.

Deposition Videography Fees

A prevailing party may recover "fees of the court reporter for all or any part of [a]

stenographic transcript necessarily obtained for use in the case." Cherry v. Champion Int'l Corp.,

186 F.3d 442, 448 (4th Cir. 1999) (quoting 28 U.S.C. § 1920(2)) (internal alteration and

quotations omitted). However, a party is not generally entitled to recover fees for both

transcribing and videotaping a deposition. Id. at 449. Indeed, unless the prevailing party can

show that both costs were "necessarily obtained for use in the case, only transcription costs are

---

[48] Stultz provides ECF email notices as documentation for the filing fees. Dkt. No. 586-6, at 14–15. While that may
not suffice as adequate documentation for other expenses, there is no question that Stultz had to pay the fees to
litigate his case. Thus, in this specific instance, I find the ECF notices to be adequate.

recoverable." Id. (quoting 28 U.S.C. § 1920(2)) (internal quotations omitted). The "concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial." Id. (citation omitted). For example, courts consider videotaped depositions as necessary for use at trial when the witnesses are beyond the court's subpoena power and there is no assurance that the witnesses will attend the trial. Hanwha Azdel, Inc. v. C & D Zodiac, Inc., Civil Action No. 6:12–CV–00023, 2015 WL 1417058, at *5 (W.D. Va. Mar. 27, 2015).

Stultz seeks to recover costs for both transcription and videography services for almost all witness depositions.[49] However, Stultz has not attempted to make any showing as to "why either a transcript or a videotape would not have been sufficient" for almost every deposition in this case. Cherry, 186 F.3d at 449. Seeing as convenience and duplication are not sufficient reasons, the Court cannot grasp why so many videotaped depositions would be necessary, especially because there is no indication that the witnesses—most of whom are located in Virginia—would be inaccessible for trial. Accordingly, because Stultz has not met his burden here, and also seeks compensation for the transcription costs for each videotaped deposition, I recommend that Stultz recover no videography costs, resulting in a reduction of $22,598.50.

Deposition Transcription Fees

As for the requested transcription fees, three requested expenses are not accompanied by adequate documentation: each is accompanied by what appears to be a bank withdrawal record, but those records provide insufficient information regarding what each expense was for. Dkt. No. 586-6, at 48–50. Not only do the bank records fail to name which depositions the costs were for,

---

[49] The specific depositions include those of Georgia Esposito, Sean Connaughton, William Anderson, Thomas Penny, Andrew Hicks, Jeannie Thorpe (parts 1 and 2), Cheryl Sanders and James Womack, Carl Stovall, Senator Steve Newman, Joseph Hill, Ronna Howard, Thomas Dash, Elizabeth Jensen, Timothy Sadler and Lynn Butner, Steve Pike and Michael Bolton, Richard Holcomb, and Sean McGowan. Dkt. No. 586-6, at 5–8.

but Stultz likewise does not indicate which deposition transcripts these amounts cover. See id. at 5. Accordingly, I recommend a reduction of $1,287.10 for those three depositions.

Furthermore, as discussed, the amount of depositions that Stultz took in this case was excessive. Stultz took 28 depositions, meaning that on average, the cost for a transcript from one deposition would be a transcript cost per deposition would equal $1,164.76.[50] There are at least 8 depositions for which there is some question as to whether they were necessarily obtained for use in this case. Therefore, instead of "laboring to dissect" which exact depositions were necessary, I recommend a reduction of $9,318.08, which is the average amount of 8 deposition transcripts. In total, I recommend an award of $22,008.02 for transcription fees.

Copying Charges

Stultz seeks $50,390.16 for in-house copy charges spanning from 2013 to 2018. It strikes the Court that over fifty thousand dollars is an unusually large amount of copying charges, even in a case of this duration. Furthermore, the Court has no way to determine if the costs were reasonable because the documentation Stultz submitted is minimal: it does not provide which documents were copied, but instead only the transaction date, "rate," "units," and total amount. Dkt. No. 586-6, at 78–82. The fact that the Court cannot discern which documents were copied is concerning because, as discussed, the sheer number of pages that Stultz submitted in his briefs and exhibits in this case was unnecessarily excessive. Cf. Adkins v. Crown Auto, Inc., 4:04 CV 00042, 2005 WL 2563028, at *5 (W.D. Va. Oct. 11, 2005) (finding itemized list of copies that included date, the documents copied, the number of copies made per day, and the charge per copy is sufficient documentation to support recovery of copying charges). Additionally, this Court has ruled, consistent with prior decisions, that copy charges of ten cents per page are

---

[50] This number includes the three depositions for which Stultz does not provide adequate documentation (which works in Stultz's favor).

reasonable. See Hanwha Azdel, 2015 WL 1417058, at *16; see also Elderberry of Weber City, LLC v. Living Centers-Southeast, Inc., No. 6:12–cv–00052, 2014 WL 3900389, at *6, *17 (W.D. Va. Aug. 11, 2014); McAirlaids, Inc. v. Kimberly-Clark Corp., Civ. Action No. 7:12-cv-578, 2014 WL 495748, at *12 (W.D. Va. Feb. 6, 2014); Adkins, 2005 WL 2563028, at *5–*6. The rate for Stultz's in-house copies appears to be twenty cents per "unit," but again, the Court is incapable of determining if the charges are reasonable, and the sheer amount requested demonstrates that they probably are not. Accordingly, I find a reasonable copying charge for Stultz's counsel's in-house copies, at a copying charge of ten cents, to be $25,195.08.

Similarly, I cannot determine whether the December 11, 2014 copying charge is reasonable because Stultz fails to provide an explanation or sufficiently-detailed documentation for the necessity of the charge. Stultz indicated that he spent $1,752.95 to print 12,855 pages of discovery (Dkt. No. 586-6, at 84), but because I am unable to determine the reasonableness of that printing, I recommend adopting the ten cents per page limit, resulting in $1,285.50 for that charge.

As for the remaining charges, Stultz seeks to recover $499.65 for services incurred as a result of the District Court's order on May 31, 2016 (Dkt. No. 426).[51] However, the Court indicated that the information relevant to that cost was to be "at the plaintiff's expense." Id. I do not find reimbursing this cost to be reasonable because Stultz was ordered to pay for it at his own expense. All other copying charges appear reasonable and are supported by documentation. Thus, I recommend a total award of $27,878.42 for copying charges.

Service of Process

Certain requested service expenses are not compensable for inadequate documentation.

---

[51] The District Court granted Stultz's motion to compel restoration of a deleted document (Dkt. No. 394), and ordered that the "Virginia Information Technologies Agency shall arrange for the December 2012 backup of defendant Richard D. Holcomb's electronic mailbox to be restored at the plaintiff's expense." Dkt. No. 426.

The documentation for June 22 and August 18 (Carroll), 2016 is inadequate because it (again) shows bank withdrawals with no indication of what those payments were for. Dkt. No. 586-6, at 93, 109. The documentation for March 14, 2016 service does not verify an amount, nor is it a legitimate receipt or invoice. Id. at 99. Finally, there is no documentation for service on April 29, 2016. Consequently, $390.00 should be deducted from the service fees.

All the service expenses that Stultz seeks compensation for are private process service fees. Recovery of fees of the clerk and marshal are expressly provided for under 28 U.S.C. § 1920(1), but the plain language of the statute makes no mention of private process servers. "While there is a split in the courts as to whether fees for private process servers fall under that provision, a clear majority of circuit courts recognize private process server fees are also taxable against the non-prevailing party." Schwarz & Schwarz of Va., LLC v. Certain Underwriters at Lloyd's, No. 6:07-cv-42, 2010 WL 452743, at *2–*3 (W.D. Va. Feb. 8, 2010) (collecting cases from different circuits). The Fourth Circuit has not yet weighed in on the issue; however, courts in the Western District of Virginia trend towards excluding costs for service by a private process server under § 1920. See Webb v. Kroger Ltd. P'ship I, Civil Action No. 7:16-cv-00036, 2017 WL 2651721, at *1 (W.D. Va. June 19, 2017) (collecting cases); see also Clehm v. BAE Sys., Inc., Civil Action No. 7:16-cv-00012, at *8 (W.D. Va. May 9, 2018) (same). I find that taxing the fees of Stultz's private process servers to the extent that such fees do not exceed the United States Marshal's fees[52] to be reasonable. This approach strikes an appropriate balance between compensating private attorneys under § 1988, while also avoiding unnecessary expense. See, e.g., Schwarz & Schwarz, 2010 WL 452743, at *3. Accordingly, the only entries warranting a reduction are August 18 (Marston) and 22, 2016. Dkt. No. 586-6, at 97, 110. All remaining

---

[52] Effective October 30, 2013, the Marshals Service fee was $65.00 per hour for each item served by one employee. 28 C.F.R. § 0.114(a)(3) (2019).

entries were under the Marshal's rate.[53] Overall, I recommend an award of $1,620.00 for service costs.

Expert Witnesses

Stultz seeks costs for his expert fees for Larry Lynch and Blaine Corle, to which Defendants do not object. Dkt. No. 586-6, at 9. A court, in its discretion, may include expert fees as part of an award of attorneys' fees. 42 U.S.C. § 1988(c). However, like for all costs, adequate documentation must accompany each requested expense. Here, there is no documentation for the $4,800.00 bill for Mr. Lynch on August 27, 2018. Additionally, Stultz has requested inaccurate amounts for four different requests. The amount actually due on December 5, 2014 was $300.00 instead of $1,800.00 because Stultz already paid the retainer on Spetember 18, 2014. Dkt. No. 586-6, at 122–23. Similarly, the amounts due on April 6, 2016, August 26, 2016, and May 1, 2018, were $1,800.00 instead of $3,600.00; $1,200.00 instead of $4,800.00; and $1,300.00 instead of $6,100.00, respectively. Id. at 124–26. Essentially, Stultz did not incorporate the amounts he previously paid in making his expense requests. Consequently, the fees for Mr. Lynch should be reduced to $9,350.00, as the documentation supports. Adequate documentation supports the fees for Blaine Corle, so I recommend awarding those in the full amount of $17,400.00. In total, I recommend an expert fee award of $26,750.00.[54]

---

[53] Facially, some amounts exceed $65.00 (see Dkt. No. 586-6, at 8), but the accompanying documentation verifies that each of the relevant amounts accounted for multiple items served and was thus under the Marshal's rate.

[54] Stultz also seeks $1,250.00 as a "witness fee expense" for the deposition of "Expert Robert 'Bob' Thomas." Dkt. No. 586-6, at 12. As discussed, Stultz represented that he eliminated all costs for experts apart from Lynch and Corle; thus, I recommend not awarding this cost. Additionally, the documentation for this request is likely inadequate because a letter purporting to enclose a check for the amount sought is not a receipt, invoice, or similarly reliable document. Id. at 183.

Electronic Storage

Stultz seeks reimbursement for $64,956.45[55] for "costs to maintain the electronic data base." Dkt. No. 586-1, at 12. Stultz asserted that "the tremendous volume of electronic disclosure (36 GB) forced [his] counsel to store such a massive amount of data off-site using a private vendor." Dkt. No. 586, at 12. As discussed, Stultz is largely responsible for the unreasonable amount of discovery conducted in this case, so reimbursement for the full amount is already suspect. Regardless, the Fourth Circuit has held that, under § 1920, costs arising out of the storage and analysis of electronically-stored information ("ESI") are generally not to be reimbursed. See Exclaim Mktg., LLC v. DIRECTV, Inc., No. 5:11-cv-684-FL, 2016 WL 1258776, at *3 (E.D.N.C. Mar. 28, 2016) (discussing Country Vintner of N.C., LLC v. E & J Gallo Winery, Inc., 718 F.3d 249, 260–61 (4th Cir. 2013)); see also Hanwha Azdel, 2015 WL 1417058, at *12 (same). While those decisions involve whether ESI charges can be reimbursed as making copies under § 1920(4), other courts have found that electronic data storage itself is also not compensable. See, e.g., CSP Techs., Inc. v. Sud-Chemie AG, No. 4:11–cv–00029–RLY–WGH, 2015 WL 2405528, at *4 (S.D. Ind. May 20, 2015) (refusing to award costs for data hosting and electronic storage services under § 1920); see also Abbott Point of Care, Inc. v. Epocal, Inc., Civil Action No. CV–08–S–543–NE, 2012 WL 7810970, at *3 (N.D. Ala. Nov. 5, 2012) (discussing chief case on the issue (Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158 (3d Cir. 2012)) and concluding that almost all district courts considering the issue since Race Tires have held costs of creating and maintaining an electronic discovery database not recoverable under § 1920).

---

[55] In his chart of expenses, Stultz seeks reimbursement for $1,040.00 for each expense from August 31, 2016, to September 30, 2018. Dkt. No. 586-6, at 10–11. However, the invoices for all of these expenses show the total due for each was $1,104.00. Id. at 150–75. I accept the amounts from the expense chart because Stultz's final calculation appears to contemplate the lesser amounts, and I am not going to speculate as to why he seeks what he seeks.

Furthermore, in a case in which a court held that ESI storage costs with an outside vendor were not compensable under § 1920, the court rejected arguments from the prevailing party that storing data in that fashion was the only manageable way in which it could manage discovery requests, and that it was typical to manage data in that way for complex litigation when voluminous ESI is involved. <u>Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.</u>, 2 F. Supp. 3d 1306, 1315 (N.D. Ga. 2014). The court held that "[s]toring documents on a pricey database was [the prevailing party's] right, but doing so was for their own convenience," and just because a party incurs a cost to increase the efficiency of its litigation does not make that cost taxable. <u>Id.</u>

While I have great reservations about awarding the full cost that Stultz seeks for maintaining the electronic database with a private vendor, Defendants do not challenge the cost, nor do they contend that the documents produced and stored in that database were neither relevant nor proportional to the litigation. As the cases illustrate, ESI storage expenses are generally not recoverable in cases not involving fee-shifting statutes. Whether § 1988 compensates counsel for these expenses, however, is still an emerging area of the law, and Defendants do not take a position either way. I observe that courts should not incentivize a party to litigation to adopt a strategy of overwhelming the opponent with unnecessary discovery, but in exchange, recipients of ESI should not unnecessarily incur a cost for their own convenience. Nevertheless, in the absence of any clear rule barring recovery of these costs, and with no argument from Defendants on the issue, I recommend that the Court grant the ESI storage costs in full.

<u>Mileage, Meals, and Parking</u>

Stultz seeks reimbursement for $6,919.91 for mileage, meals, and parking. Dkt. No. 586-

6, at 12. However, as discussed, all costs must be adequately documented, and indeed, the Fourth

Circuit has affirmed that an unverified chart of expenses, without receipts, invoices, or bills

attached, is not adequate documentation to support an award of costs. Trimper, 58 F.3d at 77; see

also Denton v. PennyMac Loan Servs., LLC, 252 F. Supp. 3d 504, 531–32 (E.D. Va. 2017)

(adopting Trimper and denying costs not supported by invoices or receipts). Stultz includes only

a printed list of these alleged expenses (Dkt. No. 586-6, at 177–81), but without documentation, I

cannot determine if those expenses are reasonable. Accordingly, I recommend that Stultz not be

compensated for his travel expenses.

Overall, I find that certain expenses are reasonable in amount and reasonably incurred,

and I recommend a total award of $146,217.29 for litigation costs.

| Taxable Costs | Amount |
|---|---|
| Filing Fees | $905.00 |
| Hearing Transcript Copies | $1,974.40 |
| Video Depositions | $0 |
| Deposition Transcripts | $22,008.02 |
| Photocopies | $27,878.42 |
| Process Services Fees | $1,620.00 |
| Expert Witness Expenses | $26,750.00 |
| E-Discovery Storage Expenses | $64,956.45 |
| Travel Expenses | $0 |
| Witness Fee Expense – for "Expert" Bob Thomas | $0 |
| Rental Expense | $125.00 |
|  | TOTAL: $146,217.29 |

## RECOMMENDED DISPOSITION

I have carefully considered Stultz's fee request and endeavored to exercise appropriate

discretion in determining the proper fee to award. The litigation that unfolded in this case is

unique because of both its length and the interlocutory appeal to the Fourth Circuit. The

litigation, however, is marked by the contentious conduct of the litigants and counsel. No doubt,

Defendants approached the case with a steadfast refusal to make any concessions, thus requiring

Stultz to doggedly pursue this action. Congress acknowledged that claims of this nature should

not incentivize a defendant to drive up the cost of litigation and consequently discourage attorneys from taking on clients who have had their rights violated—even if the damages suffered are potentially modest. Nevertheless, claims which provide for fee shifting in favor of a prevailing party should not incentivize counsel to pursue certain claims (and recoveries) for which they do not have the necessary proof or documentation. That is, a plaintiff's counsel "should not be incentivized to solicit clients with promises of riches when they do not have sufficient proof to support the claims." Randolph v. PowerComm Constr., Inc., No. 18-1728, 2019 WL 3072555, at *6 (4th Cir. July 11, 2019). I thus recommend a fee award of $792,526.10, and a costs award of $146,217.29, for a sum total of $938,743.39.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation, which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection, including a waiver of the right to appeal.

Entered:  August 14, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge